# 16 CV 4379

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

MARIA-LUCIA ANGHEL, M.D.,

Plaintiff,

-against-

Commissioner of New York State Department of
Education, MaryEllen Elia, in her official capacity,
The New York State Department of Health
The Board of Professional Medical Conduct
The Office of Professional Medical Conduct,
The Bureau of Professional Medical Conduct,
The Physician Office Laboratory Evaluation Program
The Laboratory Investigative Unit, Wadsworth Center
James F. Horan, individually and officially, Director, Bureau of Adjudication,
Howard A. Zucker, M.D., Commissioner of New York State Department of Health,
Eric T. Schneiderman, individually and in official capacity, Attorney General of NYS,
Andrew Cuomo, individually, and officially, New York Governor and former Attorney
General,Claudia Morales Bloch, individually, and officially, Kathryn Leone,
individually, Harold J. Rosenthal, individually, Eileen Heaphy, individually, Colleen
Flood, individually, and officially, Michael P. Weinstein, individually, and in official
capacity, Stephan Petranker, M.D., individually, Keith W. Servis, individually, and
officially, Roy Nemerson, individually and officially, NYS Dept of Health & Legal
Affairs, United Healthcare, and Michael Stephano, individually and as an employee of
United Healthcare, Thomas E. Mercure, individually, Robert S. Rose, individually, and
officially, John Lahtinen, individually, and officially, Elizabeth A. Garry, individually,
and officially, Michael Kavanaugh, individually, Ruskin, Moscou, Faltischek, PC, and
Alexander G. Bateman, Douglas J. Good, Robert LoCicero Records Access Office,
Arthur Spatt, individually, William D. Wall, individually, Catherine O'Hagan Wolfe,
individually, Jose A. Cabranes, individually, Susan L. Carney, individually,
Christopher F. Droney, individually, John M. Walker, Jr., individually, Rosemary S.
Pooler, individually, Richard C. Wesley, individually, Amalya L. Kearse, individually,
Dennis Jacobs, individually, Gerard E.Lynch, individually, Ralph K. Winter,
individually, Reena Raggi individually, Eric Holder, individually, Loretta Lynch,
individually, Catherine Growchowski, individually, Michael S. Marquis, individually,
Department of Health and Human Services, Center for Medicare and Medicaid
Services,                          Defendants.

----------------------------------------------------------------X

Civil action no.

16-cv-

~~AMENDED~~ VERIFIED

RICO COMPLAINT

Three-judge court requested

Special Prosecutor and

Jury trial demanded in the interest of justice

2016 JUN 10  PM 4: 45
S.D. OF N.Y.
U.S. DISTRICT COURT
FILED

3

## COMPLAINT PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT AND OTHER CAUSES OF ACTION

Plaintiff, MARIA-LUCIA ANGHEL, M.D. (hereinafter "DR. ANGHEL"), as and for her Complaint, respectfully alleges as follows:

1.  Plaintiff sues the Defendants as persons and entities associated in fact in the operation of a classic criminal enterprise, for committing a number of acts in furtherance of a conspiracy, through various criminal acts of extortion, blackmail, mail and wire fraud, tampering with evidence, witnesses and outcome, harboring and concealing fraud, retaliating against witnesses and victim, filing manipulations, delaying or blocking access to courts and evidence, and obstruction of justice, which implicates them as participants in the support and cover-up of prohibited activities, to reap or misuse millions of tax-payer dollars for their own benefit. Defendants have systematically and continuously, over the last 10 years and more, conducted a corrupt enterprise, including the operation of the federal CLIA Program, in violation of the RICO Act, all of which are continuing. This has proximately caused the wrongful revocation of Plaintiff's medical license and made it last, causing damages to Plaintiff's property rights and business, and economic harm.

2.  Plaintiff is filing this complaint as a *de facto* political prisoner, and sues the Defendants for intentional deprivation of her medical license, livelihood,  and fundamental liberties, for persecution and discriminatory animus.

3.  In the interest of justice, Plaintiff asks the Court to issue an order transferring this case back to the Southern District Court; then, an order mandating the immediate reinstatement of her medical license, *nunc pro tunc*, or an emergency TRO, a 3-judge

4

court, an order reopening her federal complaint 12-cv-03484, intervention, a special

prosecutor, and jury trial. She seeks damages, declaratory relief, a public apology,

removal of all related denigrating references to her name, on the Web or elsewhere.

## **NATURE OF THE CASE**

4.      This case is about the N.Y. State – Department of Health's discriminatory

animus against Plaintiff and its felonious revocation of her medical license, by its

retaliatory enforcement of inapplicable laws, including the Spending Clause CLIA

Statute, "under State Education Law 6530(2) and 16)", with full approval, support and

participation of two State Attorneys General, state and federal courts, two U.S.

Attorneys General, the U.S. Department of Justice, the Office of the Inspector General,

the Department of Health and Human Services, and Plaintiff's defense attorneys.

5.      There is no dispute about Defendants' discriminatory animus against Plaintiff,

because N.Y. State is the only state that has discriminated under the CLIA Program –

with the full approval and support of all Defendants, State and Federal, and Plaintiff is

the only physician who has being discriminated against under the CLIA Program –

with the full approval and support of all Defendants, State and Federal. NY State is the

only state that has run the CLIA Program as a criminal enterprise -- with the full

approval and support of all Defendants, State and Federal. What does it say about a

Government that uses tax-payer money, state and federal, to run health care programs

as a criminal enterprise and to discriminate against, destroy, and keep hostage one

person, with the full approval and support of all Defendants, State and Federal?

6.      The public importance of this case cannot be overstated.

7.      Plaintiff seeks redress against Defendants who schemed to steal property, money, and liberty, and defrauded, subverted, and violated American law, to cover up criminal activities and obstruct justice, so as to keep the scheme going and reap Plaintiff and other physicians of millions of dollars through their criminal activities.

8.      This is an independent action, not a request to review Defendants' criminal acts "on the merits". Plaintiff does not complain that Defendants made "procedural and evidentiary errors", but that Defendants have systematically conspired to usurp their power, to commit and cover up fraud, so as to deprive Plaintiff of Equal rights under law and to obstruct justice. She complains that private actors conspired with State Defendants to violate her rights under the Fourteenth Amendment, to commit and cover up fraud and abuse of process, and that federal Defendants agreed, conspired to cover up State's fraudulent enforcement of abusive regulation of the medical profession; that both state and federal Defendants practice law outside their scope, to intentionally deprive Plaintiff's class-of-one of right of access to the courts, that both deprived Plaintiff of her rights under the Commerce Clause, First, Fifth or Fourteenth Amendment, of statutory rights, and interfered with the delivery of justice.

9.      Plaintiff sues the Defendants as individuals operating public health programs, federal, (CLIA), and state, (physician discipline), as a criminal enterprise; for racketeering, extortion, fraudulent revocation of her medical license; for fabricating and falsifying evidence, harboring and concealing fraud, tampering with witnesses and outcome; lying under Oath, misstating fact and law, including controlling precedent; destroying government documents; withholding evidence to cover up criminal acts; for

6

manipulating her filings; case-fixing; misappropriation of property; for violating her vested property rights; for wanton deprivation of Due Process and Equal Protection Rights, stigma plus; for discriminatory animus under CLIA Program while receiving a federal grant, retaliation, violation of Interstate Commerce Clause[2], conversion, violations of her statutory rights to obtain documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, conspiracy to deny her the Equal Protection of the laws and her right to the reinstatement of her medical license; conspiracy to block her right of access to a three-judge court and to petition the courts, conspiracy to mispronounce jurisdiction, abuse power, cover-up fraud, and obstruct justice, for holding her hostage to null and void orders "on the merits", issued outside their statutory jurisdiction and scope of practice, for dereliction of duty, trespass, treason, malicious abuse of process; for violations of duties to uphold the U.S. Constitution and to protect litigants' rights, all of which, directly, proximately and intentionally, caused and perpetuated the wrongful deprivation of Plaintiff's medical license, property, and liberty, and irreparable damage to her medical career, reputation, privacy; for mental anguish, emotional pain and suffering, loss of society and earnings.

10.    This civil action seeks damages, from state defendants and their co-conspirators, for past violations of her rights. Plaintiff also sues three State Officials in their official capacity, for ongoing violations of her rights, as expressly prohibited by Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000, and/or of her constitutional

---

2. The Commerce Clause refers to Article 1, Section 8, Clause 3 of the U.S. Constitution, which gives Congress (not the State) the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes."...

 The Commerce Clause has historically been viewed as both a grant of congressional authority and as a restriction on states' powers to regulate.

rights pursuant to 42 U.S.C. §§ 1983 and 1985, and seeks prospective, mandamus or injunctive relief, to compel, in the interest of justice, the immediate reinstatement of her medical license and of all her stolen privileges and qualifications *nunc pro tunc*, a temporary restraining order, under *Ex parte Young*, 209 U.S. 123 (1908), oral argument, a three-judge court to determine her rights, injunctive relief under 18 U.S.C. § 1964 (a), and other relief.

11.    Plaintiff seeks an order reinstating her 2012 complaint 12-cv-03484, which collaterally attacked fraudulent and discriminatory regulation but was manipulated as "appellate review", decided "on the merits" and wrongfully closed by Defendant Spatt.

12.    Plaintiff seeks declaratory judgment enjoining, vacating, annulling, setting aside, declaring null and void all previous proceedings and orders related to this case, as each relied on fraud upon the court, or reviewed the fraud below "on the merits".

13.    Plaintiff requests immediate intervention, a special prosecutor, as the DOJ cannot investigate dereliction of duty in which it is implicated, and trial by jury.

14.    She seeks actual, compensatory, punitive, treble damages, costs, attorney fees.

15.    This is a civil action seeking damages from all Defendants, in their individual capacity, for violations of the 18 U.S.C. § 1961 et seq., the RICO Act. RICO refers to corrupt organizations, businesses, entities, government, or government agencies, including civil plaintiff's lawyers[3], who, acting covertly, or under appearance of lawful mission, actually, abuse or misuse their power or position, and commit criminal

---

3.  In *Chevron Corporation v. Steven R. Donziger, et al.*, 1:2011 cv 0069 Judge Kaplan sharply criticized Mr. Donziger and his co-defendants for breaking the law, and ruled that the Racketeer Influenced and Corrupt Organizations Act, commonly known as "RICO," applies to civil plaintiff's lawyers, such as Mr. Donziger and his co-defendants, who attempt and/or commit illegal acts, such as fraud.

acts, outside entities' legitimate purpose.

16.    This complaint arises out of the operation, by the N.Y. State DOH, a recipient of a federal grant and other tax-payer money, of a Spending Clause statutory program – the CLIA program – and of the State Professional Medical Conduct disciplinary program as a criminal enterprise, in collusion with private parties, including, but not limited to, United Defendants and Plaintiff's own attorneys, RMF Defendants.

17.    Defendants' criminal operation of the CLIA program/cover-up involves the extortionist transfer of funds from physicians to corporations, (United), discrimination and retaliation if they resist, and a covert *quid pro quo*, all of which is financed by a federal grant, tax-payer money, extortion and client money. United/DOH demand that physicians who operated a non-registered CLIA lab pay a so-called *CLIA overpayment*, knowing they do not owe it under law. United uses the coercive power of the state, harassment, intimidation, threats with license revocation, and, jointly, with the State, engage in framing tactics, to blackmail, discriminate, retaliate, destroy and eliminate those who, like Plaintiff, assert their rights against misuse of power. The framing tactics consist of: manipulation of complaints and procedure, illegal searches and seizure, invalid subpoenas, bad faith documentation of false "suspicions of fraud", fraudulently concocting opinions of "gross negligence and incompetence", planting and falsifying evidence, tampering with testimony, and with outcome. These tactics are used to file, prosecute and sustain false and fraudulent charges of medical misconduct under self-promulgated, non-existing or inapplicable laws and standards.

18.    Thus, rather than pursue proper official purposes, DOH/Defendants misuse

the federal CLIA grant, the authority of POLEP, LIU, OPMC, the "Bureau", BPMC, and tax-payer money to provide material support to private corporations like United.

19.      The cover-up of the enterprise involves different acts by different Defendants: purging exculpatory evidence, tampering with the record, submitting perjurious Affidavits/Affirmations, withholding key FOIA documents, manipulation of filings, misstating fact and law, misapplying standards and laws to manipulate the outcome, abuse of statutory power to blocks Plaintiff's access to the courts, conspiracy to make the case for the prosecution, to generate unjustified delays, refusing to report or argue prosecutorial misconduct, all of which is financed by a federal CLIA grant, by tax-payer money, by extorted money, by money paid for legal fees, or as a *quid pro quo*.

20.      All Defendants, every single one of them, approved and supported, or were callously indifferent to NYS's unauthorized, discriminatory, retaliatory enforcement of a Spending Clause (CLIA) statute. Thus, misuse of public function, power, and tax mo ney, by the DOH, courts, law-enforcement, agencies and private parties -United, medical expert, civil defense attorneys- and system-wide complicity to cover up prohibited activities, again, with tax-payer money, violate RICO, injure government offices, businesses, and organizations, corrupt their legitimacy, but, also, injure the abused.

21.      This action seeks damages from the State under Title II and VI of the Civil Rights Act of 1964, for discriminatory animus, harassment, extortion, retaliation, and persecution, through intentional misapplication of laws and standards –of practice and and of review– to deny her Equal Protection of the laws, block her access to the courts, and hold her hostage to void orders "on the merits". The U.S. Supreme Court held:

*Insofar as Title II creates a private cause of action for damages against States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. Pp. 5–8 ... Title II money damages claims were evidently based, at least in part, on conduct that independently violated §1 of the Fourteenth Amendment. No one doubts that §5 grants Congress the power to enforce the Fourteenth Amendment's provisions by creating private remedies against the States for actual violations of those provisions. This includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States. U.S. v. Georgia, 546 U.S. 541 (2006).*

22.    As to Title VI, this action seeks damages and equitable relief against the State, its arms, and officials in official capacity, for a pattern of discriminatory animus or reckless indifference to such pattern, under 42 U.S.C §§ 2000d – 2000d-7(a)(1)(2), which prohibits intentional discrimination by a recipient of federal funds . "No person in the United States shall be subjected to discrimination under any program....."

23.    This action seeks damages and injunctive relief from State Defendants, personally, in their individual and official capacity, including from five state judges Thomas E. Mercure, Robert S. Rose, John Lahtinen, Michael Kavanagh, Elizabeth A. Garry,.under Title II of the Civil Rights Act of 1964, for violations of Fourteenth Amendment rights, and pursuant to 42 U.S.C. §§1983, 1985, 1988, and state law.

24.    This lawsuit seeks, pursuant to 42 U.S.C. § 1983, *Monell* 436 U.S. at 691 and *Scheuer v. Rhodes*, 416 U.S. 232 (1974), to hold personally liable for damages, in individual capacity, the final policy-maker Defendant Cuomo, (N.Y.S. Governor), and his delegate/s, Shah and Zucker, and the chief law-enforcement officer, at relevant times, Defendant Cuomo and, respectively, Schneiderman, and their delegate, Defendant Leone, also in their individual capacity, for making, creating or perpetuating, or acting pursuant to, a policy and custom of reckless indifference to

11

violations of constitutional rights, thereby encouraging such violations to occur,

and for other personal acts: Cuomo's and Leone's pattern of refusal to turn over Court-

ordered CDs in 2010, for their role in denying Plaintiff's requests for FOIA documents,

which are overseen and ultimately controlled by the A.G.– Schneiderman, in 2011.

25.      This action seeks to hold individually liable 18 federal court officers, Spatt,

Wall, O'Hagan, Carney, Droney, Walker, Pooler, Wesley, Winter, Cabranes, Raggi,

Kearse, Jacobs, Lynch, Holder, Loretta Lynch, Growchowski, Marquis, for violating

her rights under the Interstate Commerce Clause, First Amendment and Fifth

Amendment, and making the wrongful deprivation of her license last, pursuant to

Jacobs v. United States, 290 U.S. 13, (1933), Bolling v Sharpe 347 U.S. 497 (1954)[4],

Bivens v. Six Unknown Named Agents 403 U.S. 388 (1971)

26.      This is a civil action for trespass, (system-wide usurpation of power, reaching

merits without jurisdiction, enforcing *ultra vires* orders[5], reviewing null and void

---

4. *Jacobs v. United States,* 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933), held that a plaintiff who alleged that his property had been taken by the United States for public use without just compensation could **bring suit directly under the Fifth Amendment.** A remedy also exists when **the equal protection component of the Due Process Clause of the Fifth Amendment** is violated. *Bolling v Sharpe* 347 U.S. 497 (1954).

5. Federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers. Pp. 496-504. [Butz v. Economou 438 U.S. 478, 479] (1978)

An act done in complete absence of all jurisdiction cannot be a judicial act. *Piper v. Pearson,* id., 2 Gray 120. It is no more than the act of a private citizen, pretending to have judicial power which does not exist at all. In such circumstances, to grant absolute judicial immunity is contrary to the public policy expectation that there shall be a Rule of Law.

The jurisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases, and it is said to be essential, necessary, indispensable and an elementary prerequisite to … judicial power. *US v Cotton,* 535 US 625 (2002)

Neither Judges nor Government attorneys are above the law. See *United* States *v. Isaacs,* 493 F. 2d 1124, 1143 (7th Cir. 1974). In our judicial system, few more serious threats to individual liberty can be imagined than a corrupt judge or judges acting in collusion outside of their judicial authority with the Executive Branch to deprive a citizen of his rights.

orders outside appellate jurisdiction "on the merits"), under *Elliot v. Piersol,* 1 Pet. 328, 340, 26 U.S. 328, 340 (1821), and *Osborn v. Bank of the United States,* 9 Wheat. 738, 865-866 (1824), for malicious prosecution, for conversion, and other claims.

27.     This action seeks a court order to compel CMS/DHHS and NYSDOH and Record Access Officer to release withheld documents sought since 2011 under FOIA, 5 U.S.C.§ 552 *et seq.,* an order compelling POLEP, LIU and OPMC to turn over their digital documents/e-mails related to Plaintiff's investigation, pursuant to 28 U.S.C. § 1361, and also, to compel Ruskin Defendants to release Plaintiff's file, including their correspondence, written and digital, with Defendants Cuomo, Schneiderman, Leone, or their agents, and with Mr. Lawless, (a private attorney for Plaintiff), including e-mails, as well as a copy of Ruskin Defendants' subpoena to "Patient B".

## JURISDICTION AND VENUE

28.     Plaintiff asserts several separate bases for **jurisdiction** in this court.

29.     Jurisdiction exists pursuant to 28 U.S.C. § 1331, (federal question jurisdiction), 28 U.S.C. § 1332, diversity of citizenship, as the case is against citizens of different states, and gives rise to damages in excess of $75,000. Plaintiff is a citizen of New York, Defendants Holder, Loretta Lynch, Petranker, CMS defendants are not.

30.     This Court also has jurisdiction pursuant to 18 U.S.C. §1965, which allows for nationwide jurisdiction pursuant to the RICO Act, 18 USC §§ 1961-1968.

31.     This Court has jurisdiction to mandate the reinstatement of her medical license pursuant to 28 U.S. Code § 1651 – Writs *(a) ... all courts established by Act of Congress may issue all writs ... in aid of their respective jurisdictions* – over CLIA.

32.    This Court also has original jurisdiction over the mandatory release of FOIA documents by CMS,  pursuant to 28 U.S.C. § 1361 (federal mandamus statute).

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

33.    The Court also has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B).

34.    This Court has original jurisdiction to convene a three-judge court and grant injunctive/declaratory relief, pursuant to 28 U.S.C. § 2284, as authorized by Title II of the Civil Rights Act of 1964, or directly under Title II of the Civil Rights Act of 1964

35.    This Court has original jurisdiction to convene a three-judge court and grant injunctive and declaratory relief, under the exceptions to the Anti-Injunction Statute, 28 U.S.C. § 2283, e.g., when expressly authorized by Act of Congress, like 42 U.S.C. §1983, to effectuate its judgments, or to enjoin federally-preempted regulation.

36.    This Court has power to issue a declaratory judgment under 28 U.S.C. § 2201.

37.    This Court has jurisdiction to/should issue a restraining order under 18 U.S.C. §1964(a) making due provision for the rights of innocent persons, like Plaintiff:

The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on future activities … of any person, including...not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate...commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

38.    The Southern District Court has extraterritorial jurisdiction pursuant to 18 U.S.C. §§ 1513 (d), and 1512(h), which provides in its sections (h) and (i):

(h) There is extraterritorial Federal jurisdiction over an offense under this section.

14

(i) A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

Also, jurisdiction exists, and a prosecution in the Southern District, where the offense occurred, may be brought, under 18 U.S.C.§ 1513(g).

39.    This Court also has power to enjoin State Defendants' ongoing enforcement

of orders that violate federal law, reached, as here, through conspiracy to violate equal

rights, to cover up fraud, and to clog justice, pursuant to 28 U.S.C. §1343(1)(2)(3)(4),

brought under Act of Congress that protects rights, like 42 U.S.C. §1985.

40.    This Court also has supplemental jurisdiction under 28 U.S.C. §1367.

41.    This Court also has jurisdiction to expedite proceedings under 28 U.S.C.

§ 1657, which Plaintiff hereby requests.

42.    This Court has jurisdiction over State Defendants, pursuant to Title II and Title

VI of the Civil Rights Act of 1964.

43.    For federal Defendants, this action arises under First and Fifth Amendment to

the U.S. Constitution, the R.I.C.O. Act, state, common law, and 42 USC §1988.

44.    **Venue** lies in the Southern District of New York under 18 U.S.C. § 1512(i)[6]

and 1513(g)[7]; and, also, under 28 U.S.C.§1391(b)(2), because this is a judicial district

---

6.18 U.S.C. § 1512(i)-A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) intended to be affected) or in the district in which ... the alleged offense occurred.

7. 18 U.S.C.  § 1513(g) A prosecution under this section may be brought in the district in which the official proceeding (whether pending, about to be instituted, or completed) was intended to be affected, or in which the conduct constituting the alleged offense occurred.

A special venue statute, like 18 U.S.C.  § 1512(i) and 18 U.S.C.  § 1513(g), will control over the general venue statutes, e.g. found in § 1391. See 14 D Charles Alan Wright et al., Federal Practice & Procedure § 3803 (3rd Ed. 2012). Furthermore, when there is a conflict between two special venue statutes, the venue provisions in the[se] statute[s] of narrower application usually will control over a statute that covers broader range of cases, regardless of the relative priority of the

in which a substantial part of the events or omissions giving rise to the claim occurred. Venue lies in the Southern District for the following additional reasons:

45.     The administrative hearing that led to Plaintiff's license revocation took place in Manhattan. All appellate proceedings took place in Manhattan and Albany, NY.

46.     Plaintiff's investigations were conducted mostly in New Rochelle, Westchester County and Manhattan.

47.     Upon information and belief, all State relevant documents are stored in Manhattan, Westchester, Upstate, and Albany.

48.     Upon information and belief, almost all State Defendants and witnesses (90%) reside in Manhattan or Upstate N.Y., Westchester County, etc., making Manhattan more convenient.

49.     Two Defendants are judges in E.D.N.Y., Central Islip. Also, in the E.D.N.Y., since 2013, Chief Judge Amon and, since 2015, Judge Feuerstein have repeatedly refused to convene a jurisdictional, three-judge court. The ends of justice would be defeated, if Plaintiff had to prosecute her complaint in a court where Chief Judge and three other federal judges repeatedly practiced law in violation of federal laws and rights, a clear deprivation of due process, leading to an injustice. `A fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136

50.     Also, on or around June 8, 2014, Plaintiff filed a related criminal RICO complaint with the Southern District.

51.     In criminal cases, proper venue is in the locality where the crime was

statutes' enactment. Id. See *Radzanower v. Touche Ross & Co.,* 426 U.S. 148 (1976)

16

committed or where a dead body was discovered. The crime was committed in NYC.

52.    Plaintiff's federal appeal, motions and petitions to the Second Circuit took place in Manhattan and spanned over 1.5 years.

53.    Venue is also proper in the Southern District pursuant to 28 U.S.C. §1391(e)(1)(A)(B).(e) Actions where Defendant is officer ... of the United States.

### III.    STANDING AND PARTIES

54.    Plaintiff, **Maria-Lucia Anghel, M.D.,** is a female medical doctor of foreign (Romanian) national origin and a U.S. citizen. She did two medical residencies, one in Internal Medicine and one in Anesthesiology. She completed two fellowships or subspecialties in Anesthesiology, one in Pain Management and one in Obstetric Anesthesia. She was a double-board certified pain management anesthesiologist with an office practice in East Meadow, N.Y., where she duly practiced Interventional Pain Management and Internal Medicine.  Dr. Anghel's medical practice, Interventional Pain Management, was located at 2410 Hempstead Turnpike, East Meadow, New York 11554. She has an M.B.A. degree in Healthcare, from the George Washington University and an M.A. Degree in Bioethics from the Medical College of Wisconsin.

55.    On July 22, 2009, the Board of Professional Medical Conduct (BPMC) of NYS Department of Health ("DOH"), the Commissioner of Health, their agents and co-conspirators, acting in complete absence of statutory jurisdiction over the subject matter of CLIA, schemed the disciplinary process, wrongfully dispossessed Dr. Anghel of her medical license and career, and fined her a whopping $240,000, because she asserted her rights to be free from the DOH's extortionist and fraudulent regulation.

17

56.     Based on DOH's wrongful revocation of her medical license, Dr. Anghel's two Board Certifications in Anesthesiology and Pain Medicine were revoked and she was excluded from insurance programs. Her life, career, privacy and reputation were, and continue to be, irreversibly ruined for no valid purpose.

57.     Plaintiff is the only physician, nationwide, whose medical license was revoked and whose medical career was destroyed over an alleged CLIA violation..."ALONE".

58.     The Office of the Inspector General (OIG) excluded her from participation with Medicare and Medicaid, knowing full well that the State was prohibited from enforcing CLIA and from discriminating under the Program.

59.     Since then, Defendants have continuously persecuted Plaintiff, denying her the Equal Protection of the laws, meaningful access to the courts and evidence, her statutory rights to FOIA records. (Exh. p. 132-143) These records evidence predicate acts by the defendants' criminal enterprise, as alleged with specificity herein.

60.     Plaintiff is literally a member of a protected "class-of-one". The basis for discrimination against her – a female of foreign nationality – and her class-of-one was retaliation for asserting her right to be free from fraudulent regulation.  Defendants fully intended to discriminate against her and to bludgeon her into submission.

61.     The discrimination concerned the Due Process and Equal Right of access to the courts and evidence, the right to a meaningful opportunity to be heard and give evidence, the right to enjoy and be free to pursue her medical career, the right to be free from retaliation for reporting crimes committed against her, and "the right to the full and equal benefits of all laws and proceedings for the security of persons and

18

property". *See Brown v. City of Oneonta, New York, 221 F.3d 329*, 339 (2d Cir.2000).

62.    For the last almost 7 years, Plaintiff has been injured not only as a result of the original retaliatory action by the DOH Defendants, but cumulatively, exponentially, by all other State and Federal Defendants' concerted action to cover up the original crime, which is the extortionist operation of federal and state Public Health programs and the persecution and destruction of those who disobey or report it.

63.    Plaintiff's injuries include: arbitrary deprivation of her liberty to practice medicine and enjoy life, deprivation of privacy, legal rights, legally protected vested property rights, wrongful [perpetuation of the] destruction of her property, business, livelihood, career, and reputation, and a pattern of denial of rights to exculpatory and impeaching evidence.

64.    Her injuries are proximately caused by the illegal conduct of the Defendants, each and every one of them, jointly and severally, as pled herein with specificity.

65.    Plaintiff has standing to bring the RICO complaint under Section 1964(c), because she was injured in her business and property by Section 1962 violations.

66.    The equitable tolling doctrine applies here for fraudulent concealment, ongoing *ultra vires* action, cover-up, procedural and outcome manipulations, case-fixing, and duress, committed by State, Federal and/or FOIA agents, including by private parties, (United, Petranker, RMF), and by other non-defendants.

67.    **Mark Zylberberg**, Esq., not a defendant here, but a relevant actor, was the Administrative Law Judge who oversaw an Interim Decision issued by the Hearing Committee on 2/24/2009, which exonerated Plaintiff of all, but the CLIA charges.  He

was removed through forced retirement, in June of 2009, a month before Defendants Horan, Bloch, Nemerson and others manipulated the Hearing Committee and substituted the exonerating Interim Decision with a contradicting and irrational Determination and Order of license revocation and $240,000 fine. As a result, the ALJ was prevented from exercising his duties to provide, and Plaintiff was deprived of her right to be provided, with his conclusions of fact and law, and, also, of her right to have the highly contested and fraudulent record settled by him. www.zylberberg.com Judge Zylberberg was informed by the DOH that he would be retired and that Plaintiff's case would be his last one as ALJ, after he asked or in retaliation for asking Defendant Bloch, at a protracted intrahearing, on September 23, 2008, to explain why *the CD* copy that she gave him contained not just different [false] evidence, but *different* [false] evidence *than three of them.* (Exh. p. 133-134) Defendants Bloch and Nemerson engaged in a pattern of criminal acts constituting misleading conduct and conspiracy to tamper with evidence and outcome and to conceal such evidence and to obstruct justice –see 18  U.S.C. §1512 (b)(3)(c)(1)(2)(k) – all of which constitutes fraudulent concealment. Both equitable tolling and equitable estoppel (fraudulent concealment) suspend the SOL for RICO claims.

68.     **Defendant Board for Professional Medical Conduct ("BPMC")** is an  arm of the New York State Department of Health, NYS DOH.  Through its three fact-finding hearing committee members, BPMC makes the final determination in cases of physician discipline, conducted in good faith and within disciplinary scope. But, here, the three fact-finders were manipulated and coerced to sustain cleared charges, revoke

20

license and apply a predatory fine, of $240,000 (Order 09-132, effective 7/22/2009).

69.    BPMC, and its manipulators sustained charges of negligence and gross negligence after they conceded that "the Hearing Committee had no credible evidence that any of her patients suffered any harm" (Exh. p. 10). The Order relied on fabricated evidence and on documents used outside the record. Defendants BPMC and the outcome manipulators, Bloch, Nemerson, Horan, and others, were driven by discriminatory animus, malice, retaliation, and conspiracy to retaliate and cover up their own fraud, which disqualifies the proceeding as non-judicial, thus, null and void. They conspired to misapply laws, to rely on non-existing laws, on "standards of the future", and on documents outside the record. As such, BPMC acted outside its scope as representative of the State, was a trespassor in law, and violated Title II and Title VI of the Civil Rights Act of 1964, the RICO Act, and other laws, and loses its immunity.

70.    N.Y.S./B.P.M.C., through its Hearing Committee and those who manipulated its Determination were intentional trespassers in law, as they conceded in the Determination and Order, that the State lacks jurisdiction over POLs' compliance with CLIA law and that POLs fall under federal jurisdiction.  (Det&Order, p. 7, ¶ 4)

71.    The NYS Board of Professional Medical Conduct, through its Hearing Committee (the fact-finder) is the only medical board nationwide, which, acting outside its statutory jurisdiction, in violation of federal and state laws and rights, reached merits on CLIA law and, in bad faith, heard and sustained CLIA charges.

72.    **The New York State Department of Education**, ("DOE"), is the State Authority that grants medical licenses, and a recipient of federal funds. Aware of

21

State's discrimination and trespass, DOE used power to discriminate against Plaintiff, by refusing to reinstate her medical license. DOE acted outside its state representative scope, violated Title II and VI of the Civil Rights Act and thus loses its immunity.

73.    Defendant **MaryEllen Elia**, acting under color of state law, carries out policy, as Commissioner of Education, replacing King, since 2015. She is being sued in her official capacity for mandatory medical license reinstatement.

74.    Defendant **New York State Department of Health ("DOH")** is a regulatory state agency, pursuant to Public Health Law Article 2, as authorized by Article 17, Section 3 of the State Constitution.

75.    N.Y.S./D.O.H. is the only state/agency, nationwide, that has gone outside its statutory jurisdiction to prosecute, determine and enforce CLIA, by misapplying Ed. Laws §§ 6530(16) and 6530(2)) to discriminate and retaliate against Plaintiff.

76.    N.Y. State/DOH has provided material funds, power, and significant encouragement for discrimination and retaliation against Plaintiff's class-of-one.

77.    N.Y. State/DOH exercised coercive power over the actions of Petranker, United and RMF Defendants during the events as set forth in this Amended Complaint

78.    N.Y. State/DOH/arms, a recipient of CLIA funds, discriminated against Plaintiff, in violation of Title II and VI of the Civil Rights Act of 1964, thus loses its immunity. NYS/arms/officials have continuously been trespassers, concealed exculpatory and impeachment evidence, acting outside state representative scope .

79.    Defendant **Office of Professional Medical Conduct (OPMC),** an arm of the DOH, investigates complaints about physicians. OPMC/agents violated every

mandate of P.H.L. § 230 and harassed Plaintiff. OPMC/agents are trespassers in law, for investigating subject matter they were prohibited to investigate: CLIA[8], billing fee disputes, and standard of care absent any complaint/harm; OPMC/agents and BPMC *(infra)* discriminated and retaliated against Plaintiff, by misapplying <u>hospital</u> laws and standards to her <u>office</u> practice, and by substituting the exonerating Interim Decision. *Tennessee v. Lane,* 541 US 509 (2004), *Alaska v. EEOC,* 564 F.3d 1062, 1079 (9th Cir, 2009) held that <u>*state immunity cannot extend to discrimination, harassment, and retaliation claims.*</u> In *Ass'n of Am. Phys. & Surgs, (AAPS) v. Tex. Med. Bd. (TMB),* 627 F.3d 547 (2010), the 5th Circuit denied TMB's jurisdictional arguments in its motion to dismiss and held that "dismissal under Rule 12(b)(1) was improper, and that AAPS should be given the opportunity "to prove its rather dramatic claims." Id. at 553, which included: retaliation against physicians who criticize abuses by Texas Medical Board.

80.     Defendant **Roy Nemerson** acted under color of state law as Senior OPMC counsel and Deputy Counsel for the Bureau of Professional Medical Conduct,

81.     Defendant **Claudia Morales Bloch** acted under color of state law as Associate Counsel for OPMC and Bureau, as a dishonest, deceitful, and fraudulent investigator, prosecutor, and fact witness.

82.     From 2007 to the present time, Defendants Bloch and Nemerson have each been acting in all events relevant herein as individuals operating a criminal enterprise.

83.     Defendant **Keith Servis**, acted under color of state law, as the Director of

---

8. 42 U.S.C. § 263a(g) provides that "the Secretary [of the Department of Health and Human Services] may, on an announced or unannounced basis, enter and inspect, during regular hours of operation, laboratories….only upon presenting identification to the owner, operator, or agent in charge of the laboratory being inspected."

OPMC at least since 2007. He was responsible to choose cases to be presented to an investigation committee. He acted in bad faith, as facilitator and co-conspirator in a scheme to trespass in law and to defraud, discriminate, and retaliate against Plaintiff.

84.     From 2007 to the present time, Defendant Servis has been acting in all events relevant herein as an individual operating a criminal enterprise.

85.     Defendant **United Healthcare** ("United") is a private party and one of the largest health care carriers in the U.S. with close ties to state officials. Since 2003, United, the official insurer of NYS employees, has acted under color of state law as a willful participant in crime, trespass and retaliation with DOH/defendants

86.     Defendant **Michael Stephano** is a private party and a manager of the United Investigations Unit. He acted under color of state law, in bad faith, as a willful partici-pant in extortion, harassment, retaliation, perjury, framing tactics, fraud, and coverup.

87.     From 2003 till now, Defendants United and Stephano have acted, in all events relevant, as an entity and individual, operating a criminal enterprise.

88.     Defendant **Physician Office Laboratory Evaluation Program** ("POLEP") is an arm of the DOH authorized to inspect physician offices operating a POL, in accordance with federal CLIA law.

89.     In regards to CLIA, solely the Center for Medicare/Medicaid Services, ("CMS"), administers, makes determinations and enforces CLIA law. CMS contracts with N.Y.S./states, in this case, POLEP, to operate the federal CLIA Program in compliance with federal law, which includes antidiscrimination laws – a condition which, if violated, which it was, strips states - NYS – of 11th Amendment immunity.

90.    Defendant **Colleen Flood**, acted under color of state law, as POLEP Director, at least till 2006. From 2003 to the present time, she has acted in all events relevant herein as an individual co-conspirator operating a criminal enterprise.

91.    Defendant **Laboratory Investigative Unit – Wadsworth Center ("LIU")** is an arm of the Defendant DOH, statutorily authorized under Article 28 to investigate[9] and inspect hospital and hospital-like laboratories, environmental laboratories, tissue and blood banks, and animal research facilities in New York, except for physician office laboratories ("POLs"). LIU acted outside its State representative scope as co-conspirator to trespass and purge documents that evidence predicate acts.

92.    Defendant **Eileen Heaphy,** acting under color of state law, was a senior investigator in the Laboratory Investigative Unit - Wadsworth Center.

93.    Defendant **Michael P. Weinstein** acted under color of state law, as associate attorney for LIU. In 2003, he issued an invalid subpoena under pretense of authority. (Exh p. 11-13) From 2003 to the present time, Heaphy and Weinstein, has each acted in all events relevant herein, as individual/s operating a criminal enterprise.

94.    Defendant **Stephan Petranker, M.D.** was a private party, acting under color of state law, as "expert" for the DOH, and willing participant in discrimination, fraud and trespass in law. From 2007 to the present time, Defendant Petranker has also acted in all events relevant herein as an individual operating a criminal enterprise.

95.    Defendant **James F. Horan,** under color of state law, signed the release, by

---

9. N.Y. State was granted a <u>partial</u> exemption from CLIA, because it enacted enacted regulation for "facilities" or hospital "clinical laboratories" that satisfies P.H.S. Act §353 (p)(2). Therefore, facilities and hospital laboratories fall under the jurisdiction of N.Y. State DOH.

certified mail, of the Determination and Order of the BPMC, that revoked Plaintiff's medical license, as "Acting Director, Bureau of Adjudication". At least since 2008 till today, he has acted in relevant events as an individual operating a criminal enterprise.

96.      DOH Defendants are liable for conducting their proceedings outside their disciplinary scope and with malice, in violation of Public Health Law § 230 prerequisite to their immunity[10].

97.      Defendant **Ruskin Moscou Faltischek, P.C.** ("RMF") is a law firm in Nassau County. RMF Defendants, including Mel Ruskin, Esq. (not a defendant) who documented in his billings his research of the CLIA Law, were complicit with the state in the cover-up of its fraudulent prosecution of a Spending Clause statute. Also, in 2010, RMF firm participated through its employees (Rona Kupferberg) and partners (Defendant Bateman) and agreed to revise, at the request of Defendants Leone and Cuomo, Plaintiff's appellate record, generating a bill to the Plaintiff of about $10,000, just to satisfy their dubious request, rather than their client.

98.      **Alexander G. Bateman**, is Plaintiff's former counsel and Partner at RMF.

99.      Defendant **Douglas J. Good**, one of Plaintiff's former counsels, was Senior Partner with RMF. He was complicit with Defendant Bateman in his false denial and cover up of DOH prosecutors' misconduct. From 2008 up to the present time, Defendants Bateman, Good and RMF firm have each acted in all events relevant

---

10. Public Health Law 230. Section 8 reads: Notwithstanding any other provisions of law, no member of a committee on professional medical conduct nor an employee of the board shall be *liable in damages to any person for any action taken or recommendation made by him within the scope of his function as a member of such committee or employee provided that a) such member or employee has taken action or made recommendation within the scope of his function and without malice, and b) in the reasonable belief after reasonable investigation that the act or recommendation was warranted, based on the facts disclosed.*

herein as individuals, or entity, operating a criminal enterprise.

100.    Defendant **Andrew M. Cuomo** is being sued in all events relevant

herein as an individual operating a criminal enterprise since 2007. As to other claims,

he, like other Defendants, acted under color of state law, as A.G. from 2007 to 2010,

and as Governor, since 2011. The functions of the attorney general are summarized as:

> The **attorney general** is an executive office in all 50 states that serves as the chief legal advisor and chief law enforcement officer for the state government and is empowered to prosecute violations of state law, represent the state in legal disputes and issue legal advice to state agencies and the legislature. In most states, the attorney general has a substantial influence on a state's approach to law enforcement. Attorneys general often set particular law enforcement priorities (e.g. drug law, civil rights violations or sexual crime) and focus extra resources on these issues. This puts them, in the words of the National Association of Attorneys General, at the "intersection of law and public policy."[1][2]

101.    As a result of Cuomo's advice to state agencies, of his influence on priority-

setting, and of his strong support for a "pay-to-play" policy, in 2007, OPMC,

admittedly, "restructured its policy"[11]. As a direct and proximate result of Cuomo's

corrupt, mob-style policy, Plaintiff was permanently put out of business for 7 years

now, and the enterprise fully agrees. And it supports him – not the victim.

102.    Plaintiff's 7-year wrongful deprivation was paid for with tax-payer money,

some of which went to, or came from, the federal CLIA grant, legal costs, legal fees.

103.    As Attorneys General, Defendants Cuomo and Schneiderman, his successor,

---

11. Under Cuomo's new policy, United sent Plaintiff the last letter of extortion, demanding $108,000 as "overpayment for CLIA labs". (Exh.) Two weeks after she replied asking for documentation for the alleged overpayment, OPMC relaunched its investigation of the Plaintiff, which had not been voted to a hearing under the old policy, in 2005. This time, the OPMC investigation focused on the opinion of an alleged expert, Defendant Petranker, that Plaintiff's treatment of two patients was substandard, negligent...despite no harm or complaint of harm. The real purpose was to destroy her property, business, livelihood, and career and to punish her with predatory penalties, pursuant to Cuomo's pay-to-play policy.

*(infra),* have a mandatory duty to prosecute public corruption, fraud, and organized crime and to enforce only laws within his/their law-enforcement power, or to recuse themselves and appoint an independent prosecutor, and to protect civil rights and businesses subjected to discriminatory regulation, prohibited by Title II. Instead, both A.G.s defended, and conspired to cover up corrupt regulation with tax-payer money.

104.     As Governor, Defendant Cuomo is empowered through Article IV of the N.Y.S. Constitution and is the State final policy-maker, charged with the duty to faithfully execute the laws and to create,  administer, maintain customs, practices, policies, and laws that are complained of in this action.

105.     Defendant Eric T. Schneiderman, from 2011 to present time, has been acting in all events relevant herein as an individual operating a criminal enterprise. He has also acted under color of state law as N.Y. State Attorney General since 2011. He continued Cuomo's policy and priorities, and, like Cuomo, he supervised Leone.

106.     Like Cuomo, he defended, covered up, and continues to cover up public corruption and to enforce laws, in a discriminatory and trespassory manner, in violation of Title II, and VI, U.S. Constitution, and RICO Act, with tax-payer money.

107.     Defendant **Kathryn Leone** acted under color of state law as Assistant A.G. of New York State, for both Cuomo and Schneiderman, between 2009-2011.

108.     From 2009 to present time, Defendant Leone has been acting in all events relevant herein as an individual operating a criminal enterprise.

109.     Defendant **Harold Rosenthal** acted under color of state law in 2010 as Director of and Associate Attorney for the Bureau of Litigation, Department of Legal

Affairs.

110.     From 2010 to present time, he has been acting in all events relevant herein as an individual operating a criminal enterprise.

111.     Defendants **Robert S. Rose, Thomas E. Mercure, John Lahtinen, Michael Kavanaugh, and Elizabeth A. Garry,** since 2009, have each acted in all events relevant herein as an individual operating a criminal enterprise. They acted under color of state law, alone, or on a five-judge appellate panel of the Art. 78 Court, 3rd Dept., State Appellate Division, a.k.a. "the Court of the A.G".

112.     Since 2011, **Defendant Robert Lo Cicero** acted in all events relevant herein as an individual operating a criminal enterprise. In 2011, he was a Record Access Officer for State FOIA requests, charged with the production of FOIA documents from the DOH.  .

113.     Valerie Giordano and Dennis Graziano, are also relevant actors, but they are not being sued at this time.  Each was a Record Access Officer for State FOIA requests. The A.G., Defendant Schneidderman, supervised them.

114.     Defendant **Arthur Spatt** acted in all events relevant herein as an individual operating a criminal enterprise. He also acted under color of federal law[12] as U.S. District Judge for the Eastern District of New York, Central Islip, assigned to Plaintiff's civil rights complaint, case 12-CV-03484, denying her any and all relief, including prospective injunctive relief as the immediate reinstatement of her

---

12 It's a federal crime for anyone acting under "color of law" willfully to deprive or conspire to deprive a person of a right protected by the Constitution or U.S. law. "Color of law" simply means that the person is using authority given to him or her by a local, state, or federal government agency.

wrongfully-revoked medical license, pursuant to a policy and pattern of abusive and fraudulent regulation, of reckless indifference to arbitrary violations of Due Process and Equal Protection rights, and also pursuant to ongoing violation of federal law, and fraud upon the court. Defendant Spatt acted *ultra vires,* in violation of express statutory prohibitions, and unlawfully decided the case "on the merits".

115.    Defendant **William D. Wall** acted in all events relevant herein as an individual operating a criminal enterprise. He also acted under color of federal law as Magistrate Judge for the Eastern District of New York, in case 12-CV-03484. Like Defendant Spatt, Defendant Wall acted in violation of express statutory prohibition under 28 USC 2284 and Title II of the Civil Rights Act of 1964, thus *ultra vires.* outside his statutory jurisdiction. Around February 28, 2013, he terminated Plaintiff's motion for a three-judge court - which was for Defendant Spatt to decide - and also terminated her motion to expedite discovery and proceedings, blocking Plaintiff's access to the court, to discovery of withheld evidence, and to Equal Justice.

116.    Defendant **Catherine O'Hagan Wolfe** acted in all events relevant herein as an individual operating a criminal enterprise. She also acted under color of federal law as Clerk for U.S. Court of Appeals for the Second Circuit, cases 13-2908, 14-599.

117.    Defendant **Susan L. Carney** acted in all events relevant herein as an individual operating a criminal enterprise. She acted under color of federal law on a two- and three-judge motion panel, and as single 2nd Circuit judge, in case 13-2908.

118.    Defendant **Jose A. Cabranes** acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law on a

two- and three-judge motion panel, as single judge, and on a three-judge appellate panel, case 13-2908, 2nd Circuit.

119.    Defendant **Christopher F. Droney** acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law and on a three-judge motion panel, case 13-2908

120.    Defendant **John M. Walker, Jr**. acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law and on a three-judge motion panel, case 13-2908, as 2nd Circuit Judge

121.    Defendant **Rosemary S. Pooler** acted in all events relevant herein as an individual operating a criminal enterprise. She acted under color of federal law on a three-judge motion panel, as 2nd Circuit Judge, case 13-2908.

122.    Defendant **Richard C. Wesley** acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law on a three-judge motion panel, as 2nd Circuit Judge, case 13-2908.

123.    Defendant **Amalya L. Kearse** acted in all events relevant herein as an individual operating a criminal enterprise. She acted under color of federal law on a mandamus three-judge panel, as 2nd Circuit Judge, case 14-599

124.    Defendant **Dennis Jacobs** acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law on a mandamus three-judge panel, as 2nd Circuit Judge, case 14-599

125.    Defendant **Gerard E.Lynch**, acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law on a

mandamus three-judge motion panel, as 2nd Circuit Judge, case 14-599

126.    Defendant **Ralph K. Winter** acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law on a three-judge appellate panel, as 2nd Circuit Judge, case 13-2908.

127.    Defendant **Reena Raggi** acted in all events relevant herein as an individual operating a criminal enterprise. She acted under color of federal law on a three-judge appellate panel, as 2nd Circuit Judge, case 13-2908

128.    Defendant **Loretta Lynch** acted in all events relevant herein as an individual operating a criminal enterprise. She acted under color of federal law, as U.S. Attorney for the Eastern District of New York, case 12-CV-03484, in 2012-2013., and as U.S. Attorney General, in 2015, while Plaintiff filed a petition for certiorari with the U.S. Supreme Court, case 14-1285. At all times she refused to intervene/enjoin NYS's discriminatory action against Plaintiff.

129.    Defendant **Eric Holder** acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law as United States Attorney General between 2012-2014, when Plaintiff filed her federal complaint 12-CV-03484, her appeal, 13-2908, her petition for a writ of mandamus 14-599, and of certiorari 14-1285 with the US Supreme Court.  At all times he refused to intervene/enjoin NYS's discriminatory action against Plaintiff.

130.    Defendant **Catherine Growchowski** acted in all events relevant herein as an individual operating a criminal enterprise. She acted under color of federal law as CMS FOIA Officer between 2013-2015.

131.    Defendant **Michael S. Marquis** acted in all events relevant herein as an individual operating a criminal enterprise. He acted under color of federal law as CMS, Director, Division of FOIA. Exh. p. 143.

132.    In the last almost three years, between 2013-2015, Plaintiff requested federal government records under FOIA from the CMS (Center for Medicare and Medicaid Services, which regulates physicians' compliance with CLIA Law). On numerous occasions, Defendant **Catherine Growchowski** and her superiors denied Plaintiff's FOIA requests and also her appeal seeking FOIA information regarding CMS's instruction to the DOH to close United's complaint for lack of jurisdiction, claiming that no records existed. Case 012920137030. The law requires CMS to disclose FOIA information in a case where, as here, such information would reveal criminal wrongdoing by a state recipient of a federal grant – NYS. Under the Program, NYS discriminates, retaliates, harasses, trespasses, coerces, extorts, threatens and intimidates and destroys property, business, livelihood, and keeps its victim hostage – for 7 years now. Furthermore, as it turns out, both the Federal and State Government are involved in the criminal enterprise. Both discriminate/retaliate. Both have misused their office to cover up wrongdoing. Both have conspired to withhold FOIA documents that would evidence predicate crimes and both ignore predicate crimes and perpetuate them, or commit their own crimes of conspiracy to obstruct justice.

133.    For the last 7 years, the DOH's fraudulent, null and void Order has been wrongfully enforced by three State Commissioners of Health and two State Attorneys General, one of whom is the current N.Y.S. Governor, and it has also knowingly been

relied on by the Commissioner of Education to deny her medical license reinstatement.

134.     Dr. Anghel has been subjected to system-wide persecution for 7 years now.

She has been held hostage to null and void, *ultra vires* orders "on the merits",

by four state courts, and, for the last 3.5 years, by three federal courts, including by the

U.S. Supreme Court which denied Plaintiff's petitions for a writ of both mandamus and

certiorari.. All courts refused to reach issues of jurisdiction, law and rights, and denied

her equitable relief indeed, any and all relief, "on the merits". Complicitly, all courts

acted outside their statutory jurisdiction, or refused to take jurisdiction. They ignored

fraud upon the court and ongoing violations of federal laws, rights and duties, and

unlawfully reached "merits" of null, void and non-final orders, rendering their own

orders null, void and non-final.

135.     Likewise, in dereliction of their duty, both U.S. Attorney Lynch and Attorney

General Holder refused to enforce the laws, including the anti-discrimination laws of

the United States in Plaintiff's case, as they loudly pursue in other cases. Complicitly,

both ignored and perpetuated NYS policy of retaliation and intimidation against those

who speak out about criminal deprivation of rights.

## IV.  FACTS COMMON TO ALL COUNTS

136.     On 7/22/2009, Plaintiff's medical license was wrongfully revoked during a

wholly inadequate and fraudulently conducted hearing. Among the fraudulent charges

permeating the entire proceeding were two federally-preempted  CLIA charges. The

CLIA charges were filed, prosecuted, sustained, enforced, and upheld by the DOH and

N.Y.S Appellate Division, in complete absence of statutory jurisdiction, in violation of

federal CLIA law, of the P.H.S.Act § 353(p)(2), of the RICO Act, of Title VI and Title II of the Civil Rights Act of 1964, of the Commerce Clause, of 42 U.S.C.§1985, of the Fourteenth Amendment, and of the Supremacy Clause. And they were deliberately ignored by all (three) federal courts.

The CLIA Law

137.    Congress enacted the Clinical Laboratory Improvement Amendment ("CLIA") Act, 42 U.S.C. §263a(g)(h)(i)(k), and CLIA's implementing regulation 42 C.F.R. Term 493), under the Interstate Commerce Clause, pursuant to the Social Security Act, like Medicare and Medicaid. .

138.    By its express terms, CLIA, and any violation thereof, is a Spending Clause statutory scheme to be determined and enforced by federal authorities.

139.    *The Supreme Court has repeatedly held that spending clause statutes* [like Medicare, Medicaid, and CLIA] *preempt inconsistent state law. Townsend v. Swank 404 U.S. 282 (1971) Federal Spending Clause legislation trumps conflicting state statutes or regulations.*

140.    As the U.S. Supreme Court said,

> *The Commerce Clause confers "rights, privileges, or immunities" within the meaning of §1983. In addition to conferring power on the Federal Government, the Clause is a substantive restriction on permissible state regulation of interstate commerce. And individuals injured by state action violating this aspect of the Clause may sue and obtain injunctive and declaratory relief.* Dennis v. Higgins 498 U.S. 439.(1991)

141.    In *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967), the U.S. Supreme Court declared that engaging in interstate commerce is a

35

"righ[t] of constitutional stature".

142.    By virtue of her medical license, Plaintiff was engaged in interstate commerce.

143.    Regarding CLIA, Public Health Service Act, §353 provides:

*(p) State Laws(2) If a State enacts laws relating to matters covered by this section which provide for requirements equal to or more stringent than the requirements of this section or than the regulations issued under this section, the Secretary may exempt clinical laboratories in that State from compliance with this section.*

144.    N.Y. State has no statutory scheme for Physician Office Laboratories (POLs), as required by the P.H.S.Act § 353(p)(2). POLs fall under the exclusive jurisdiction of the federal government.

145.    The Center for Medicare and Medicaid Services, ("CMS"), contracts with states, in this case with the Physician Office Laboratories Evaluation Program ("POLEP"), an arm of N.Y. State, which, under a federal grant, must operate the federal CLIA Program in compliance with federal law.

146.    Pursuant to Title 28 U.S.C. §1337, "the district court shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce", (like Medicare, Medicaid, CLIA, OSHA).

147.    U.S. Courts of Appeals have *exclusive* appellate jurisdiction over CLIA, pursuant to 42 U.S.C. §263(a)(k).

148.    Pursuant to federal law, 42 U.S.C. §263a(h), **jurisdiction to determine what sanctions are to be imposed for a CLIA violation is vested *exclusively*[13]. in the Secretary of Health and Human Services**. The statute provides:

_____

13. See *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984): If Congress's intent is made clear by statute, "that is the end of the matter...".

"The Secretary shall develop and implement procedures with respect to when and how each of the intermediate sanctions is to be imposed under paragraph (1)".

149.    42 U.S.C. § 263a(h)(2) provides the sanctions the Secretary may impose, from remedial measures to financial sanctions, to revocation of the certificate to run a CLIA laboratory. There is absolutely no mention of a medical license revocation by the Secretary.

150.    As Thomas L. Heckert (the Director of POLEP) testified, in 2008, at the hearing that led to Plaintiff's license revocation:

> "The real enforcement through CLIA is with the federal government. [] [T]hey would be the ones who actually make the final determination. So, we would recommend this to the Federal Government and then they would be the ones who actually make the final determination". (R. 1310-1313)

151.    The United States had previously instructed the State of New York to cease its investigation of Dr. Anghel's laboratory and never filed any charges.

152.    No Physician in the United States has ever been brought up on charges, criminal or civil, alleging a CLIA violation.

153.    Upon information and belief, to date,

a) CMS, i.e. the federal government, would not prosecute a physician for a CLIA violation.

b) no physician has been prosecuted by CMS for an alleged CLIA violation.

c) no physician has been prosecuted by the federal government (i.e. The People of the United States of America) for an alleged CLIA violation.

d) no civil action has been brought against a physician by CMS for a CLIA violation

e) no civil action has been brought against a physician by the federal government (i.e. The People of the United States of America) for an alleged CLIA violation.

f) the "punishment" for submitting claims for laboratory services to Medicare without proper CLIA certification is merely denial of the Medicare claim.

154.    The moving force behind Plaintiff's license revocation was United.

155.    In 2003, Defendants United and its employee, Stephano, complained to: the State DOH, Laboratory Investigative Unit ("LIU"), Office of Professional Misconduct ("OPMC"), Physician Office Laboratory Evaluation Program ("POLEP") and to the federal government: the Center for Medicare and Medicaid Services ("CMS"), the Office of the Inspector General ("OIG"), and the Federal Bureau of Investigations ("FBI"), that Dr. Anghel's office bills ("HCFA forms") for lab tests lacked a CLIA registration number for her physician-office laboratory ("POL") to be in compliance with the Clinical Laboratory Improvement Amendments ("CLIA").

156.    Between 2003–2008, United conspired with the DOH to harass, intimidate, frame Plaintiff and to threaten medical license revocation, unless she paid $108,000+.

157.    Invoking DOH's coercive power, United was being quite successful collecting unlawful "CLIA debts", extorting physicians to "pay-to-play".

158.    After five years of harassment, invalid subpoenas, fraudulent fishing expeditions, bad faith documentation of phony "suspicions of fraud", and illegitimate threats with license revocation–in violation of 18 U.S.C. §§1961-1962(b), 1512, 1513–DOH prosecutors filed, around 4/21/2008, a Book of False/Fraudulent Charges, in complete absence of statutory jurisdiction. All charges (negligence, gross negligence, incompetence, excessive tests and treatment, failure to maintain records, intentional violation of substantial provisions of CLIA, and fraudulent violation of CLIA) were false and malicious – filed in the absence of any harm or complaint of harm – filed fraudulently

without subject matter jurisdiction over the CLIA, feloniously, based exclusively on fabricated evidence, and, vindictively, driven by discriminatory animus, based on inapplicable laws that regulate <u>hospitals</u>, not Plaintiff's <u>office</u> practice, and in violation of every statutory mandate–including a **<u>timely</u>** interview for **<u>each</u>** patient, **<u>before a</u>** **<u>mandatory</u>** Investigation Committee – which is ***<u>statutory</u> <u>condition</u> <u>precedent to any</u>*** charges, pursuant to a policy, practice and pattern of fraudulent and abusive regulation and of foul play, and of deliberate indifference to constitutional rights and duties.

159.    Despite massive prosecutorial fraud upon the court including fraudulent charges relying on planted evidence, on 2/24/2009, the fact-finder "Hearing Committee" issued a favorable Interim Decision, <u>exonerating Plaintiff of five of seven</u> <u>charges</u>, but not of the invalid CLIA charges, finding that: "the medical care provided to patients C, D, E, F, and G meets minimal standards of care based on <u>ALL OF THE</u> <u>EVIDENCE</u> we have, the <u>records</u> that we have and the testimony of <u>both experts and</u> <u>Dr. Anghel</u>. to date, and that...EVERYTHING THAT SHE DID WAS MEDICALLY INDICATED AND JUSTIFIED [INCLUDING LABS AND THINGS}, BASED ON ALL EVIDENCE". See Exh. Interim Decision. p. 1-7

160.    For the past 12 years and more, Defendants have systematically and continuously conducted a corrupt enterprise, in violation of the RICO Act, all of which acts are continuing in nature. Both State and Federal Government have used all the resources at their disposal to impoverish and destroy Plaintiff in order to cover up criminal acts and fend off civil charges. As a direct result of their criminal enterprise, rights deprivation, material support, cover-up and obstruction of justice, Dr. Anghel

has suffered and continues to suffer enormous and irreparable harm.

161.     All Defendants and their co-conspirators engaged in, or supported, a pattern of regulatory, law-enforcement, and judicial trespass, and of criminal activities, intended to intimidate, harass, extort and coerce physicians, like Plaintiff, to pay money they do not owe under the law, or lose their medical license.

162.     All Defendants' and Plaintiff's activities affect/ed Interstate Commerce.

163.     The acts of both State and Federal Defendants are continuing arbitrary and abusive violations of Dr. Anghel's federal rights.

164.     Each named defendant committed at least two related acts of prohibited racketeering activity (violations of law, felonies, or predicate acts), which constitute a pattern of "racketeering activity" that amounts to, or poses a threat of, continued criminal activity. Each Defendant's and Defendants' joint goal was the same: wear down and destroy Plaintiff, cover up government wrongdoing and obstruct justice.

165.     While fully aware of State's *ultra vires* and discriminatory action[14] on CLIA, a Spending Clause statute, of its corrupt "pay-to-play" policy, and of Plaintiff's effort to enjoin State's violations of the Commerce Clause, its discriminatory enforcement of inapplicable laws, and its abusive and fraudulent regulation, all named individual Defendants and other unnamed individuals, every single one of them, deliberately and continuously conducted, participated in, supported, or covered up a corrupt enterprise

---

14. "Action" – never before addressed by any court – refers to LIU's and OPMC's unauthorized investigation of CLIA subject matter, OPMC's/Bureau's *ultra vires* prosecution of CLIA charges, BPMC's *ultra vires* determination and order and sanctions re: CLIA, A.G.'s *ultra vires* enforcement of BPMC Order re: CLIA , State Appellate Division *ultra vires* review, upholding CLIA charges (and also to action on other non-jurisdictional subject matter, *infra*), and Ruskin Defendants' refusal to challenge State *ultra vires* action on behalf of Plaintiff.

and acted, jointly and severally, to perpetuate the wrongful revocation of Plaintiff's medical license until this very day, in violation of the RICO Act, of Title II and Title VI of the Civil Rights Act of 1964, of First, Fifth and Fourteenth Amendment.

166.    Defendants' cover-up and conspiracy to obstruct justice will continue indefinitely until stopped, as indicated by Defendants' ongoing racketeering since 2003, which includes their ongoing criminal destruction of Plaintiff's medical career since 2009, both at state appellate level and at federal levels, in addition to their relentless denials of her requests for FOIA information.

167.    Plaintiff's injuries and deprivation of her legal rights are directly, proximately, substantially and foreseeably related to the illegal conduct of the Defendants, each and every one of them, jointly and severally.

168.    Defendants, each and every one of them, have acted in concert and conspired to misappropriate, i.e. steal, Plaintiff's medical license and crucial documents, and to ignore, cover up, support, and perpetuate  a pattern of violations of Plaintiff's rights.

169.    Defendants' pattern of fraudulent manipulations and abuse of power and their deliberate indifference to rights violations proximately caused Plaintiff's deprivation of her license, property, business, livelihood, career, right and ability to earn such income and of  liberty to practice medicine and to enjoy life, which are hers, by legal right.

170.    Almost 7 years after they stole her medical license, complicitly, each and every one of the Defendants continues to hold on to Plaintiff's property, to withhold, conceal, and falsely deny the existence of exculpatory and impeachment evidence, or to deny her access to her property, citing/relying on *ultra vires* orders "on the merits".

41

171.    All Defendants have conspired and collaborated with, and aided and abetted plans, actions and efforts, by and for the benefit of State Defendants and their co-conspirators, to cover up a pattern of criminal activities, including their use of false or fraudulent authority to harass, intimidate, and extort physicians, to unlawfully funnel money, disguised as CLIA "overpayments", from physicians to corporate insurers, and to frame Plaintiff in retaliation for disobeying and exposing their criminal demands.

172.    All Defendants have actual knowledge that material support provided by the DOH and officials of the State is fraudulently solicited, offered and encouraged.

173.    All Defendants actually know and/or have reason to know, that a federal grant, tax-payer money, and material support provided to the DOH and its arms are actually misused to operate the CLIA Program and State physician disciplinary proceedings as a criminal enterprise, to a) extort physicians; b) conduct illegal searches for framing purposes; c) fabricate, falsify, and tamper with evidence, record, and testimony, including expert testimony; d) tamper with the outcome; e) retaliate against witnesses and whistle-blowers for reporting and criticizing the abusive and fraudulent regulation of the medical profession; f) steal whistle-blower's license, by misapplying laws in a discriminatory manner, and hold h/er to higher standards; and that tax-payer funds are further misused by the judiciary, law-enforcement, and FOIA agencies, to cover-up Government corruption, to deny the whistle-blower the Equal Protection of the laws, and to obstruct justice, "in the interest of public trust".

174.    All Defendants, every single one of them, jointly and severally, knowingly engaged in prohibited activities, violated the Commerce Clause, the RICO Act, the

U.S. Constitution, and controlling precedent. Also, State Defendants and their co-conspirators deliberately violated Title II and VI of the Civil Rights Act of 1964, 42 U.S.C. § 1985, and Plaintiff's constitutional rights, pursuant to 42 U.S.C. §1983.

175.      All Defendants conspired, aided and abetted one another to deny Plaintiff the Equal Protection of the laws, to interfere with her access to the courts and evidence, to violate her First Amendment right to petition the courts. All agreed to ignore their lack of jurisdiction to review null and void orders "on the merits"; to deceive, distort or ignore usurpation of power, fabrication of evidence, and reliance on documents outside the record as "procedural and evidentiary errors"; to fraudulently invoke "preponderance of the evidence", "substantial evidence, "collateral estoppel, and rubber-stamp the fraud by "Summary Order". All Defendants agreed to violate, ignore or support ongoing violations of federal laws and rights, including State's null and void determination and enforcement of CLIA- a Spending Clause statute, its violation of the Supremacy and Commerce Clause, its discriminatory application of the laws, so as to keep Plaintiff hostage, and to impede, hinder, obstruct, or defeat due course of justice.

176.      All Defendants know, and have reason to know, that the DOH operates the CLIA program as a criminal enterprise, that private corporations conspired with the State DOH, Cuomo, and Schneiderman, as Attorney General, at relevant times, to extort and threaten physicians with license revocation, to collect an unlawful "CLIA debt", or they complicitly support it, and that Plaintiff was singled out for retaliatory revocation of her medical license, over six years ago, for failure to "pay-to-play".

177.      All Defendants know that Congress occupies the CLIA field with a statutory

scheme that deals with interstate commerce, both independently, through their own knowledge, and because Plaintiff made a record of the law.

178.    All Defendants are complicit in Plaintiff's persecution. Their personal participation in perpetuating State's discriminatory and *ultra vires* enforcement of CLIA and other inapplicable laws and standards is obvious, because every single one of them did nothing to correct this wrong, and, in fact, went outside their authority, to cover it up and make it last. Not a single one of them fulfilled his duty to enjoin State Officials' enforcement of discriminatory action against Plaintiff, a violation of Title II and VI of the Civil Rights Act of 1964, which strips them of all immunities.

179.    Every single one of the Defendant judges and attorneys/general had a duty to intervene, to report, hear, investigate, or properly refer the pattern of predicate acts described, for independent investigation, and, also, to recuse themselves, but refused to, and stayed on, so as to continue to cover-up criminal activities. All Defendants used their power as a weapon of personal destruction under state or federal law.

180.    State and Federal judges, jointly and severally, refused to offer Plaintiff the Equal Protection of the laws, violated her First Amendment Right to petition the courts, conspired to cover-up criminal activities, arbitrarily denied/blocked her right of access to the court, and blocked her right to discovery of crucial evidence, with the intent to cover up criminal activities and fraud upon the court. They conspired to usurp their power, to engage in trespass, to review null and void orders "on the merits", to block and manipulate Plaintiff's motions to compel and her petitions for a writ of mandamus, to discriminate against her, to corruptly manipulate her filings, to reach an

illegitimate outcome, to overtly engage in case-fixing, and to obstruct justice. All federal court officers conspired to dispose of Plaintiff's motions for a three-judge court, to misstate facts, law and rules, to influence the outcome, and to obstruct justice.

181.    All law-enforcement officers, Defendant State and Federal Officials, every single one of them, acted recklessly, in dereliction of duty, violated their clear and indisputable statutory duties to act within their statutory jurisdiction, scope of practice and constitutional bounds, to end State and federal discriminatory action, and free Plaintiff from captivity to null and void orders. Through their actions and inactions, they complicitly supported and ignored criminal activities, they created or acted pursuant to a *de facto* policy or custom of deliberate indifference to rights violations, and they were grossly negligent managing subordinates who caused these violations. All of them violated Plaintiff's right to claim and rely on Defendants' duties for relief.

182.    Both State and Federal (CMS) Defendants purged and/or concealed from the Plaintiff public records to which Plaintiff is entitled under FOIA Act.

183.    Both State and Federal Defendants concealed government documents such that they were not available to be searched or produced to the Plaintiff under FOIA.

184.    Both State and Federal Defendant FOIA Officers have intended to deprive Plaintiff of her right of access to exculpatory and impeachment evidence, by unlawfully withholding documents to which she was entitled under FOIA.

185.    The withheld documents are crucial to the Plaintiff. They would reveal that State's and CMS's compliance with the FOIA was corrupted by the RICO enterprise, by the malfeasance and felonies committed by United, Stephano, Bloch, Nemerson,

Petranker, Heaphy, Weinstein, Servis, Horan, Leone, Rosenthal, Schneiderman, Cuomo. They would have further provided the basis to overturn the wrongful revocation of Plaintiff's license. Their concealment is prolonging irreparable harm.

186.    To this day, these FOIA documents, seeking exculpatory and impeachment evidence including CDs that were used to manipulate expert testimony and to frame Plaintiff, and the CMS's communications with and instruction to the State to close Stephano's complaint and CLIA investigation for lack of jurisdiction have never been found or produced and therefore, the criminal enterprise is continuing.

187.    Both LIU and POLEP agents testified that they purged their records in 2006, but their digital records still exist.

188.    Likewise, RMF Defendants have conspired to withhold Plaintiff's file, which would also provide crucial information and evidence of a pattern of predicate acts..

189.    An official and co-conspirator/s, including organizations can be personally liable for abuse, fraud, corruption, and misuse of public office, and the State for discrimination and other acts.

### United, POLEP, Flood, LIU, Heaphy, Weinstein, State and CMS FOIA Officers and Supervisors and Their Relevant Acts and Conspiracy .

190.    United Defendants (the corporation and its employee, Michael Stephano), in concert with State Defendants, have, for many years, continuously operated a criminal RICO enterprise, by a continuous pattern of related felonies, against physicians, including Plaintiff, committing extortion, blackmail, intimidation, tampering with evidence, perjury, money-laundering and other predicate acts.

191.     Knowingly and intentionally, Defendants have abused, and misused State and Federal resources, tax-payer money and power, and a federal grant, for criminal and discriminatory purposes. In response to United's CLIA complaint and pressure, which CMS had ordered POLEP to close around 12/7/2003, for lack of jurisdiction, and in violation of federal law, POLEP, through its Director, Flood, Stephano, and LIU devised a scheme and reached an agreement for LIU to take over the CLIA investigation of the Plaintiff and pursue it "as a LIU matter".

192.     The State operated the CLIA Program with discriminatory animus toward Plaintiff, while receiving a federal grant under the Program, in violation of Title  II and VI of the Civil Rights Act of 1964, and, as such, it is stripped of 11th Amendment immunity. The State is liable for damages.

193.     Consistent with a system-wide policy of purging or concealing exculpatory and impeachment evidence, POLEP and LIU reached an agreement to purge their records in 2006. The purge was confirmed in 2008, by then Director, Mr. Heckert, and by Heaphy, under Oath. Plaintiff sought these records from CMS between 2013-2015, under FOIA. Suspiciously, her requests were repeatedly denied. (Exh. p. 141-143), which also implicates CMS in the scheme. POLEP, LIU, and CMS acted outside their scope. The equitable tolling doctrine applies to concealment or purging of evidence.

194.     The NYS A.G., Schneiderman, and, likewise, Marquis, for the CMS, is each in charge of, and has full control over the FOIA requests and violations. He is fully aware of State's ongoing violations and concealment of the FOIA documents requested by Plaintiff. He was cc-ed in one of the requests. See Exh.  p. 135. He has full control

over this part of the RICO enterprise, which continues, while and because he controls this part of the enterprise. Likewise, Marquis and Growchowski control the enterprise.

195.    Defendants' overt acts of secreting and destroying records are committed in furtherance of their corrupt criminal enterprise.

196.    Defendant LIU, through its agents, Heaphy and Weinstein, conducts illegal searches and seizure of private offices under pretense of authority. As a matter of state-wide policy of usurpation of power and deliberate indifference to violations of physicians' rights, created and perpetuated by Cuomo and Schneiderman, and their delegates, LIU falsely advertises on its Web site that it is authorized to investigate POLs, which is an official policy of misrepresentation of authority and trespass.

197.    Defendant Heaphy and LIU  misused and abused her Article 28 authority over hospitals, to inspect, search and seize Dr. Anghel's office and records, and, also, to unlawfully serve, (as a party), an invalid subpoena for her office records, issued by Defendant Weinstein under his Art. 28 authority, thus, invalidly, pursuant to a state policy of deliberate indifference to violations of Fourth/Fourteenth Amendment rights.

198.    Defendants' Flood, POLEP, Heaphy, LIU, Weinstein fraudulent, trespassory and record purging schemes and CMS's, Marquis' and Growchowski's conceal scheme were executed through the fraudulent use of wire and mail.  18 U.S.C. §§ 1341, 1343.

### Defendants OPMC, Bureau, Bloch, Nemerson, Servis, United, Stephano, Petranker, and Their Relevant Acts and Conspiracy

200.    Knowingly and intentionally, Defendants have abused, and misused  the resources of the OPMC, Bureau, and LIU – tax-payer money – for fraudulent purposes, to aid and abet United Defendants' extortionist enterprise.

201.    In their position, both Bloch and Nemerson repeatedly provided state tax-payer funds and material support to their co-conspirators, knowing that such funds would be used for illegal activities, blackmail, extortion, intimidation, fraud, wrongful property destruction and deprivation of livelihood and of liberty to practice medicine.

202.    As prosecutors, both Bloch and Nemerson knew that they had no authority to use tax-payer money, to prosecute CLIA charges and that providing material support to United Defendants to collect unlawful money and encourage them to threaten license revocation, as they had done with other physicians, was prohibited.

203.    To defeat the law, DOH and United designed a plan to operate a covert enterprise to manipulate non-jurisdictional, non-actionable complaints.

204.    Between 2003-2009, with intent to frame Plaintiff for fraud, Defendants United, Heaphy, Flood, Weinstein, Servis, Bloch, and Nemerson, participated in a conspiratorial scheme to bypass all the federal and state jurisdictional bars and all the statutory mandates, and to fabricate a case of fraud – by documenting false suspicions of fraud, and planting false evidence in Dr. Anghel's billing records, using perjury, and filing charges based on evidence planted by themselves, in violation of 18 U.S.C. §§ 1512(b)(3); (c)(1)(2); (k).

205.    In 2007, pursuant to Cuomo's "pay-to-play" policy, and to his advice to OPMC to "restructure its policy", to accommodate United, which was still seeking to collect "CLIA overpayments", OPMC restructured its policy. Under Cuomo's "priorities and policies", in the absence of any harm or justification, OPMC Defendants devised a scheme to frame Plaintiff for incompetence, whereby Petranker,

a <u>hospital</u> physician, would offer his "expert opinion" about Plaintiff's <u>office</u> practice, under hospital standards, and thus hold her to higher standards than required by the law, so her case could be moved to a hearing for *negligence, gross negligence, and incompetence, and failure to maintain records* "indefinitely", as hospitals do.

206.    In furtherance of their scheme, they reached an agreement for Stephano and United to select the largest billing records that United had on file under Dr. Anghel's name, [manually] compile them in <u>editable</u> spreadsheets – i.e. spreadsheets that "do not lock" – so Stephano, Bloch and Nemerson could "edit" i.e. falsify Plaintiff's actual billing records and fabricate "a case of fraud"; and offer them in a CD format along with Stephano's Affidavit, [falsely] attesting that the spreadsheets "are accurate computer printouts of Plaintiff's billings, generated in the regular course of business", (Exh. p. 23-24), intentionally misquoting case law; and, in furtherance of their scheme, to obtain expert testimony about the planted evidence, "in support" of false charges of "excessive tests and treatment", "fraudulent violation" of CLIA,  intentional violation of substantial provisions of CLIA, gross/negligence, failure to maintain accurate records, and incompetence"; and use and rely on sufficient fraud, as "preponderance of the evidence", to revoke Plaintiff's medical license.

207.    In furtherance of their scheme, they reached an agreement with Patient B, and Petranker, and conspired to rely on their perjury – on Patient B's "credentials" (Exh. p. 31-34) and on Petranker's false "credentials". (Exh. p. 149-150, 160)

208.    Both DOH and their expert also intended to operate a covert enterprise by tampering with expert testimony through CDs outside the record. With the intent to

escape scrutiny and to manipulate the outcome, right before the expert's testimony, Bloch handed Defendant Petranker unscrutinized CD/s, outside the record, containing DOH's talking points, falsely claiming that the CD was a "copy" [of the Original CD offered by Stephano]. **Dr. Petranker**: "I have my own copy". See hearing transcript [T. 1255, 1437] See also "I don't have a copy...shortly I shall". Exh. Petranker p. 124. When, in March 2010 Plaintiff filed her first motion to compel Defendants to turn over all the CDs used, Defendants refused, and, under penalty of perjury, lied and deceived about the existence of such CDs in their Affirmations.

209.     Upon objection, they covered up the fraud by offering perjurious testimony, and more perjurious Affidavits (Stephano's second perjurious Affidavit, Exh. p. 28-30) to  defraud the ALJ, the Plaintiff, the Hearing Committee, the courts, and the American People of tens of millions of tax-payer dollars. They did so with the full support of the remaining Defendants, including Cuomo, who, personally, in March of 2010, as shown by his name above his AAG's name, encouraged his own AAG, Defendant Leone, (Exh. p. 88-93) and Bloch (Exh. p. 94-96 ) and later, Rosenthal (Exh. p. 35-36) to submit perjurious Affirmations to the courts.

### Defendant Petranker and his Relevant Acts of Conspiracy

210.     Defendants Nemerson and Bloch acted in concert, aided and abetted, and conspired with their expert, Defendant Petranker to devise a scheme to manipulate expert testimony, thus, the outcome, and cheat the judicial system and Plaintiff, by preparing and handing him CD/s outside the record, which he used/read from, during his testimony. **Dr. Petranker**: "I have my own copy/CD". [T. 1255, 1437]. His

"copy" was deceivingly presented as "a copy of the CD that everybody has", (Exh. p.124) – but actually, it was an unscrutinized CD, containing DOH's talking points which Petranker read with impunity as his "expert opinion". During his four days of "expert testimony", in August and September of 2008, Petranker misrepresented his credentials, (Exh. p. 149-161), and, also, testified re: <u>hospital operating room standards</u> under Art. 28 of Public Health Law, J.C.A.H.O., and other codes, which were irrelevant to Plaintiff's private <u>office</u> practice of medicine. In furtherance of their conspiracy, Bloch reached an agreement with Petranker for him to assume that the billing spreadsheets that she was projecting up on the wall accurately reflected Dr. Anghel's treatment, when in fact she knew that they were not, and that in fact they . contained hundreds – upward of 240 false data – planted by Stephano and Bloch to fabricate a case of fraud. (See. Exh.) Petranker agreed, and testified that, based on the billing spreadsheets, which "he used for frequency", her treatment was excessive, not medically, negligent, violating 18 U.S.C. §1512(b)(1)(3)(c)(1)(2)(k).

211.    All Defendants know and have reason to know, that this CD is currently being suppressed by Bloch, Nemerson, Horan, Cuomo, Schneiderman, or Lo Cicero, Giordano, Graziano, and others, along with other CDs that further prove prohibited activities under 18 U.S.C. § 1962(b)(c)(d). See Exh .p. 43.

## Defendant James F. Horan and his Relevant Acts of Conspiracy

212.    A public official can be personally liable for abuse, corruption or misuse of public office, as these acts are not part of his official sanctioned duties.

213.    At all times, from the beginning of Plaintiff's investigation until today, all

actors, including Defendant Horan, as attorney and Administrative Law Judge, and all attorneys, court officers, and administrators in this case had full knowledge that the DOH lacks jurisdiction to prosecute, determine, enforce and sanction alleged non-compliance with a Spending Clause CLIA statute, that such actions are *ultra vires,* and that they were prohibited to discriminate under the Program.

214.    Horan was also fully aware that the Determination and Order cited and relied on use of unscrutinized and uncertified documents which were not in evidence, including Exhibit 12, the ALJ's CD, Petranker's CDs, and a letter intended "for ID only".

215.    Defendant Horan collaborated with, conspired with, aided and abetted, participated in, enabled, facilitated, and approved DOH' discriminatory and fraudulent Determination and Order of deprivation of medical license and $240,000 fine, by personally signing, as "Acting Director, Bureau of Adjudication," its content and release. His signature signifies his control over and ratification of DOH Defendants' discrimination, retaliation, trespass, and fraud under the federal CLIA Program.  .

18 U.S.C.  §1512(b)(3). Whoever engages in misleading conduct...to delay, prevent communication...of a federal offense. And  § (c)(2) Whoever corruptly -  otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

216.    Pursuant to above conspiracy, in violation of  18 U.S.C. § 1512(k) and of Title II of the civil Rights Act of 1964, and of 42 U.S.C. § 1985, Defendant Horan further directed any request for review by the ARB to himself as ALJ, rather than to an independent adjudicator. Through this self-referral scheme, an impermissible COI, Horan personally controlled and impeded or attempted to impede and influence and control the outcome.

217.     He acted pursuant to a *de facto* policy and pattern of fraudulent regulation and of wanton indifference to wrongful deprivation of physicians' property and liberty.

218.     Defendant Horan was intimately involved in the retaliatory substitution of the exonerating Interim Decision with the fraudulent Determination and Order.

219.     Around July 17, 2009, Defendant Horan used the mail to execute DOH Defendants' and their co-conspirators' scheme to defraud the Plaintiff of her property/license, knowing it was reached through fraudulent representation of authority and fraud, in violation of the mail fraud statute 18 U.S.C. § 1341.

**Defendant Andrew Cuomo and his Relevant Acts of Conspiracy**

220.     In his position as former NYS Attorney General, now Governor of NY State, Defendant Andrew Cuomo, personally and actually, knows that United and the DOH, jointly, misuse state disciplinary authority, to extort physicians of unlawful CLIA debts, frame them, and threaten prosecution if they don't pay it. Indeed, it was he who "restructured" policies, perfected and replaced old, abusive policies with more abusive and fraudulent policies, including aggressive "pay-to-play" policies. But for his "restructured" pay-to-play policies in 2007 when he became Chief Officer of law enforcement, and for his "partnership", with United, and for the State support and encouragement he provided the DOH with, the DOH would have never prosecuted CLIA charges, indeed, would have never prosecuted Plaintiff at all[15].

---

15Dr. Anghel was interviewed without reason or justification, in 2005. That interview was never voted to a hearing. In 2007, United sent her another letter of extortion. After she asked United to substantiate the basis for its demands for the alleged "overpayment", OPMC immediately offered her an interview, "because the OPMC policy was restructured".

221.    Under Cuomo, who, as Governor and ultimate policy-maker, nominated two Commissioners of Health so far, both Shah and Zucker failed to enforce Public Health Law 230, which requires to disclose exculpatory evidence "on a continuous basis." Under Cuomo, the DOH has corrupted its regulatory power over professional medical conduct to punish and retaliate against those who assert their rights against its corruption and usurpation of power.

222.    Cuomo is the first State A.G. in the U.S.A. and Schneiderman the second one who abused his law-enforcement power to enforce compliance with the Spending Clause CLIA statute, with full intent to discriminate against Plaintiff's class-of-one; and also to enforce discriminatory and vindictive sanctions for an office physician's "non-compliance" with JHACO and Article 28 hospital rules and standards. Both state and federal Defendants have agreed with Cuomo's and Schneiderman's trespassory acts and discriminatory animus against Plaintiff, because each and every one of them rubber-stamped their discriminatory enforcement of inapplicable laws. Not even the Supreme Court bothered to disturb State's operation of the CLIA Program as a criminal enterprise and it had three opportunities to enjoin it.

223.    Defendant Andrew Cuomo has personally collaborated with, conspired with, aided and abetted United's extortionist practices and he encouraged additional investigation and prosecution of Plaintiff, which he provided additional material support for.

224.    In violation of his duty to the public and Plaintiff, as Attorney General of New York State, Defendant Cuomo wrongfully enforced and defended violations of

the Interstate Commerce Clause and of Plaintiff's Equal Rights, of Title II and VI of the Civil Rights Act of 1964, of 42 USC 1985 and of the U.S. Constitution, which expressly prohibit these violations. He defended DOH's retaliatory and discriminatory action, covered it up, and, corruptly, enforced the criminal deprivation of Plaintiff's license, livelihood, liberty and property with tax-payer money. He refused to order an independent investigation into DOH's criminal practices and to recuse himself. He acted in dereliction of duty.

225.      In his supervisory capacity Defendant Cuomo encouraged and ratified three counsels' perjurious Affirmations, to cover up Defendant DOH's fraud. He failed to correct[16] fraud upon the Court and upon Plaintiff. The three counsels' perjurious Affirmations were material to Plaintiff's case, and they were relied upon by the Appellate Division Defendants to dismiss her meritorious motions to compel, thereby proximately prolonging the wrongful revocation of her license by by 5.5 years now.

226.      The arbitrary deprivation of Plaintiffs' constitutional rights and her injuries stemming from investigatory and regulatory trespass were proximately, substantially and foreseeably caused by conduct chargeable to Defendant Cuomo, to his perpetuation and enforcement of a practice of deliberate indifference to rights violations, which encouraged a culture of corruption and rights deprivation. He is personally responsible for a pattern of misconduct that amounts to reckless disregard

---

16 A supervisory official may be deemed to have personal involvement where he failed to remedy a constitutional wrong after learning of a violation through a report or appeal. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Courts in the Southern District have found that personal involvement is sufficiently pled where the grievant "alleges an ongoing constitutional violation such that the supervisory official who reviews the grievance can remedy it directly." *See Burton v. Lynch,* 664 F.Supp.2d 349, 360 (S.D.N.Y.2009) (quoting *Vega v. Artus,* 610 F.Supp.2d 185, 198 (N.D.N.Y.2009)); *Braxton v. Nichols,* No. 08 Civ. 8568, 2010 WL 1010001 at *9 (S.D.N.Y. Mar. 18, 2010).

for deprivations of physicians' constitutional rights.

227.     As Attorney General, Cuomo corruptly misused and abused his law-enforcement power, to cause public health funding and material support to be used for unauthorized purposes − to collect money not owed under the law, to encourage *quid pro quo*, to benefit and reward corruption of United and the State DOH, to encourage framing tactics and to destroy Plaintiff, in retaliation for her refusal to to "pay-to-play", and to defend, cover up, and enforce fraudulent orders and regulation. Then, as Governor, and ultimate policy-maker, he notoriously expanded his corrupt pay-to-play policy[17] misused public health funds and tax-payer money to defend and cover up the prohibited activities that he and others, at his directive, engaged in, while he was A.G. and to obstruct justice.

228.     As A.G., later, Governor, Cuomo has not only been fullyaware of, but has personally and complicitly been behind intimidation and framing tactics, encouraging regulatory and law-enforcement abuses, orchestrating fraud upon the court and upon Plaintiff, and deliberately ignoring constitutional violations by the DOH, by his own office, and by himself against physicians, like Plaintiff. For example, he and Defendant Leone opposed fiercely Plaintiff's 2009 OSC for a TRO, which sought to enjoin the enforcement of the order of wrongful medical license revocation. He did so

---

17. Assemblyman Kieran Michael Lalor (R,C,I – Fishkill) is charging SUNY Albany and Governor Cuomo with flagrant pay-to-play cronyism as part of the START-UP NY program. … Lalor continued, "From the beginning, Cuomo's START-UP NY scheme was ripe for cronyism and abuse. Now we see it happening at SUNY Albany. SUNY Albany and Governor Cuomo are endorsing a pay to play economy. Write a check and they'll reward you. If you don't know the right people and can't write a check you're out of luck." http://www.rocklandtimes.com/2014/07/17/start-up-ny-cronyism-pay-to-play-with-cuomo-and-suny-albany/

to cover up Government corruption, including his own role in OPMC's restructured policy, to make the license revocation last, and to irreversibly harm Plaintiff. Likewise, between 2009-2010, while representing the DOH, as A.G., he opposed vehemently Plaintiff's letters and motions to compel the DOH to turn over exculpatory and impeachment evidence, like the CDs that the Bureau used outside the record and tampered with, to manipulate the outcome, including Defendant Petranker's CD.

229.    While fully aware of the DOH's fraud, instead of recusing himself and appointing an independent counsel to prosecute DOH's abusive and unconstitutional regulation, Cuomo directed and encouraged three officers of the court – Defendants Leone, Bloch, Rosenthal – to submit perjurious affirmations to the Appellate Division, falsely alleging that all the CD (copies) were the same[18]. Their Affirmations conflicted with the record and proved, beyond a reasonable doubt, that State Defendants suppressed tampered evidence, defied a court order, and perjured themselves. Cuomo's name is listed in the signature rubric, on the last page of each of the two Affirmations in reply to Plaintiff's two motions to compel, so he is personally responsible for inducing perjurious Affirmations (Exh. Attached).

230.    Cuomo's tampering with the three fact witnesses' Affirmations is a crime under 18 U.S.C. §1512.

231.    Cuomo directed and authorized Leone (in his supervisory, administrative, investigative capacity) to put together an appellate record that would cover up DOH's fraud and mislead the courts, and Schneiderman ratified the fraudulent record.

---

18 Defendants circulated CDs outside the record, falsely calling them "CD copies". Because the record clearly shows that the content of those so-called copies was different, they were not copies. Clearly, they were attempting to deceive the Court and Plaintiff, . Since they were not scrutinized and not in evidence, , but version resulting from Defendants' Nemerson and Bloch tampering with CDs.

232.    Both Cuomo and his successor, Schneiderman, as Attorneys General, in dereliction of duty, defended and refused to investigate DOH's fraud upon the court, As such, both are personally responsible for obstructing justice.

233.    Both Cuomo and Schneiderman enforced fraud upon the court.

234.    Both Cuomo and Schneiderman and the Defendant court officers, Bloch, Leone, and Rosenthal, as well as Nemerson, who was credited by Bloch with creating the "copies" conspired, aided and abetted one another to perpetrate and cover up fraud, fully intending to obstruct justice. As a result, Plaintiff's motions to compel were dismissed, which prolonged her injuries.

235.    Acting under a serious COI, by sitting on this case and defending fraud upon the court, all three Defendants, Cuomo, Schneiderman continue to deny Plaintiff access to the court and a fair trial, as they are covering up their own fraudulent and discriminatory conduct.

236.    Then, as Governor, as the ultimate policy-maker, Cuomo misused public health funds and tax-payer money to defend and cover up the prohibited activities that he and others, at his directive, engaged in, while he was A.G..

237.    All Defendant federal court officers are or should very well be aware of these allegations and of the referenced perjurious Affirmations, because they are part of the record in the federal courts, case 12-cv-03484, 13-298, 14-599, 14-961, 14-1285.

238.    Cuomo's name listed in the signature rubric, above Leone's on the last page of each of the two Affirmations in reply to Plaintiff's two motions to compel, (Exh. attached), indicates his personal attention and decision to personally direct and

encourage the three officers of the court to submit Affirmations to the Appellate

Division, which were intentionally perjurious for the sole purpose of

defeating Plaintiff's motions to compel and of covering up DOH's corruption.

239.    A year later, in 2011, while acting as Governor of the State, pursuant to a

policy of reckless indifference to violations of physicians rights, which, as the State

ultimate policy-maker, Defendant Cuomo created or perpetuated, his former Assistant

A.G., Defendant Leone, defended the use of fabricated evidence as "rules of evidence

do not apply" to disciplinary proceedings – another  perversion of DOH's policy.

240     Both Cuomo and Schneiderman, as A.G.s, and Cuomo, as Governor, partici -

pated in, covered up, denied, defended and enforced fraud with tax-payer money.

241.    Cuomo is currently under investigation by U.S. Attorney Preet Bharara, for

corruption and meddling with the Moreland Commission which he created to allegedly

root out corruption in New York State, and for disbanding it when its investigation got

too close to him. In its 98-page report, the Commission focused extensively on the

Legislature, ignoring the offices of governor, controller and attorney general. The

Moreland Commission concluded:

> "New Yorkers already are too aware, from the laundry list of indicted public
> officials, that our State has been hit hard by corruption … Our investigation thus far
> reveals a pay-to-play political culture driven by large checks, anemic enforcement
> of the weak laws we have on the books, and loopholes and workarounds that make
> those laws weaker still."

242.    When Cuomo, who, as A.G., defended DOH's fraud, became Governor of

the State of NY, he instituted a policy whereby State employees are required to delete

their official e-mails every 90 days. N.Y. Times reported:

"He and his aides go out of their way to avoid leaving a paper trail, relying on messages sent through BlackBerry phones, and his administration has often chafed at requests under the Freedom of Information Law.

Mr. Cuomo's aides said the governor's office had been deleting emails after 90 days since at least 2007, when Eliot Spitzer was governor and Mr. Cuomo was attorney general. Mr. Cuomo, in fact, adopted a similar policy for the attorney general's office."...

"Last year, The New York Times sought records of his phone calls, emails, text messages and a type of BlackBerry-to-BlackBerry communications — known as PIN messages — for a period of 10 weeks. The governor's office responded by providing heavily redacted phone logs and said it had no other records". http://www.nytimes.com/2015/03/13/nyregion/calls-to-end-quick-purge-of-new-york-state-workers-email.html?_r=0

243.    Cuomo has personally collaborated with, conspired with, aided and abetted the blackmail, extortion, threats, intimidation and coercion, jointly committed by United and the DOH, by complicitly ignoring such criminal acts, by refusing to seek an independent investigation, and by forcefully opposing the reinstatement of Plaintiff's medical license, thus amplifying and agreeing with their blackmail, extortion, threats, intimidation and coercion committed against Plaintiff, which is illegal as organized crime under RICO.

244.    In all of these actions, Cuomo has acted intentionally, knowingly and willfully to assist and promote the interests of United, because he is motivated to place the corporate interests ahead of the interests of public health and public trust. Both as A.G. and as Governor, Defendant Cuomo encouraged a culture of corruption, cover-up, and deprivation of constitutional and statutory rights.

### Defendant Eric Schneiderman, Current State Attorney General and His Relevant Acts and Conspiracy

245.    A public official can be personally liable for abuse, corruption, or misuse of public office.

246.     When Plaintiff filed her appeal from the BPMC's Determination and Order with the Appellate Division-Third Department, Defendant Schneiderman defended, enforced and covered up the DOH's criminal misconduct with tax-payer money, which he continues to do today.

247.     In his position as current Attorney General, Schneiderman personally and actually knows that his law-enforcement scope excludes physicians' compliance with federal CLIA law and office physicians's compliance with hospital or non-existing rules and standards and that Officials are prohibited from discriminating and retaliating against those who assert their rights.

248.     Acting under color of state law, Schneiderman personally and actually knows that he has a duty to end his discriminatory and retaliatory enforcement of Spending Clause CLIA statute and of other inapplicable laws, regulations, laws and standards, under JCAHO and Article 28, that such ongoing enforcement, for six (6) years now, is not only unconstitutional and statutorily prohibited by Title II of the Civil Rights Act, but criminal. Retaliation against a victim, or witness violates 18 USC 1513. Plaintiff was both a victim and an eye witness of DOH's fraud, indeed of system-wide fraud, cover-up and obstruction of justice, and Schneiderman is part and parcel of this enterprise.

249.     Like his predecessor Cuomo, Schneiderman continued Cuomo's pattern and practices, by providing material support to United, Petranker, DOH, for their criminal conduct, using resources and tax-payer money, to defend and commit criminal acts and conspiracy.

250.    Like predecessor Cuomo, Schneiderman personally and actually knew that the federal CLIA grant was being misused to funnel money from physicians to United.

251.    Furthermore, Schneiderman and his Assistant A.G. Leone have actively sought to intimidate and threaten sanctions against Plaintiff and her counsel, on the 4th of January, 2011, after Plaintiff sent a Five-Day Demand Letter, seeking exculpatory and impeachment documents that the DOH and Cuomo were complicitly concealing, thus delaying her filing of her appeal by 1.5 years. (See Exh.)

252.    Like Cuomo, as A.G., Schneiderman personally and actually knows that LIU is misusing its Article 28 authority to investigate physician offices, and that LIU fraudulently advertises on its Web site that it is authorized to investigate POLs. His ratification of such trespass constitutes official policy of regulatory and law-enforcement trespass, and reckless indifference to physicians' rights deprivation.

253.    Schneiderman has personally encouraged fraud upon the Court and upon Plaintiff, by publicly supporting, defending and enforcing it. He supported each and every fraudulent act defended and enforced by his predecessor, Cuomo. Schneiderman, Cuomo, and Leone were complicit in their defense and cover-up of DOH's criminal enterprise and deprivation of Plaintiff's rights.

254.    His Web site bombastically, falsely and deceivingly publishes:

A.G. Schneiderman Joined By Local Activists Calling For The Passage bf His Sweeping Ethics Reform Legislation In Buffalo

"End New York Corruption Now Act" Would Strengthen Hands Of Local And State Prosecutors, Professionalize Legislature, And Reform Campaign Finance System
Read More »

## Our Office

As head of the Department of Law, the Attorney General is both the "People's Lawyer" and the State's chief legal officer. As the "People's Lawyer," the Attorney General serves as **the guardian of the legal rights of the citizens of New York**, its organizations and its natural resources. In his role as the State's chief legal counsel, the Attorney General not only advises the Executive branch of State government, but also defends actions and proceedings on behalf of the State.

The Attorney General serves all New Yorkers in numerous matters affecting their daily lives. The Attorney General's Office is charged with the statutory and common law powers **to protect** consumers and investors, charitable donors, **the public health** and environment, **civil rights**, and the rights of wage-earners **and businesses across the State**.

http://www.ag.ny.gov/

255.     Defendant Schneiderman is prohibited from discriminating under the CLIA Program, and from enforcing compliance with federally-preempted Spending Clause CLIA Statute and with other inapplicable laws in a discriminatory manner. He violated and continues to violate federal law, federally-protected rights, the Commerce Clause, Equal Rights, Title II and Title VI of the Civil Rights Act of 1964, and the U.S. Constitution.. Like Cuomo, he acted and continues to act in dereliction of duty.

256.     Schneiderman, as Attorney General of New York State, enforced and continues to enforce the fraudulent, null and void BPMC Order of license revocation. He defended and covered up fraudulent practices and regulation, and, corruptly, enforced the criminal deprivation of Plaintiff's license, livelihood, liberty and property with tax-payer money. He refused to order an independent investigation into DOH's criminal conduct and to recuse himself.

### Defendant Leone, former Assistant Attorney General to Defendants Cuomo and Schneiderman, and her Relevant Acts and Conspiracy

257.     A public official can be personally liable for abuse, corruption, or misuse of public office.

258.    After Plaintiff sent, on 12/24/2010, a five-day letter seeking withheld documents that prevented her from stipulating to the record and thus from filing her appeal, Leone, with the full knowledge, direction, and supervision of Schneiderman, personally engaged in intimidation tactics, threatening sanctions against Plaintiff and her then-counsel, Defendant Bateman, if she didn't withdraw her letter and publicly retracted her statements, which are true in every respect. See attached Five-day demand letter.

259.    Under Cuomo's direction and supervision, around June of 2010, Leone conspired with RMF firm/Defendants to tamper with the Appellate Record, deceive the Court, and cover-up DOH's fraud upon the court. For example, in the Table of Contents, she listed the wrong page number – 99 instead of 200 – for the description of the external markings of the highly contested <u>Original CD, Exhibit 12, but never marked Exhibit 12</u>, so as to deceive the Court about DOH's substitution of the Original CD designated Exhibit 12 with another version, <u>another CD marked Exhibit 12</u>, which was never certified and was illegally sneaked into the Record, and which in fact did not contain 52 descriptions of a needle billing code, falsified by Defendant Bloch. Her reckless indifference to the gravity of DOH's and her own misconduct is illustrated in her reply at Oral Argument, in May, 2011: "So what if the CDs were different?" Her reply came after almost 2 years of forceful denials that the CDs were different. Leone praised Bloch for her "professionalism" in her Opposition to Plaintiff's appeal, indicating her reckless indifference to Bloch's misconduct.

260.    Leone lied repeatedly in her Affirmations and defense of DOH's fraud, in

order to conceal documents and to cover up DOH's fraud.  Her acts constituted fraud

upon the court and obstruction of justice and were conducted with the full knowledge

and encouragement of Cuomo, and, later, Schneiderman, in their supervisory capacity,

Both of them were recklessly indifferent and in fact conspired and directed

her to do such acts, so as to cover up DOH's fraud and clog justice.

261.    Leone has corruptly misused her position as Assistant A.G. to give material

support, to defend, and cover-up the DOH and its co-conspirators' criminal

enterprise with tax-payer money.

### Defendant Servis and his Relevant Acts and Conspiracy

262.    Acting pursuant to Cuomo's restructured policy of complicit indifference to

violations of physicians' Due Process and Equal rights, and with the intent to

manipulate the outcome by defeating mandatory statutory checks and balances,

Defendant Servis aided and abetted, acted in concert, and conspired with United, LIU,

OPMC investigators and Defendants, Bloch and Nemerson, to device a scheme or

artifice to by-pass mandatory procedure, so as move the case to a hearing. He did so,

without reason or justification, absent any harm or complaint of harm, and in

violation of a statutory jurisdictional bar – an interview under PHL 230 (a) iii, which is

"condition precedent" to the convening of any Investigative Committee, and to any

charges, which included *ultra vires* charges, like the CLIA charges. He acted in bad

faith and outside his statutory scope or jurisdiction.

### Defendant Roy Nemerson and his Relevant Acts and Conspiracy

263.    As Bloch's superior, Defendant Nemerson personally and directly

participated in, and oversaw her use of fraud. He signed all three sets of false charges, including Bloch's retaliatory amendment of false charges to more severe charges based on zero evidence. He was instrumental in the creation of CDs that permitted their custodian to tamper with data. He created conditions conducive to tampering with testimony and outcome. He conspired with Bloch and Petranker to tamper with expert testimony by secretly creating CDs containing expert talking points that would deceivingly be used without being in evidence. He conspired with Bloch and Cuomo and Schneiderman to withhold the Original CD, Petranker's, the ALJ's CDs for 7 years now, in defiance of a court order, of FOIA requests, of statutory and constitutional duties, so Officers could not comply with requests.

264.    Nemerson, Bloch and Horan conspired to manipulate and coerce the Hearing Committee, after the ALJ was removed, to substitute the Committee's exonerating Interim Decision, with a fraudulent Determination and Order, thus tampered with the outcome.18 U.S.C. § 1512(b)(3)(c)(1)(2)(k)

### Defendant Heaphy and her Relevant Acts and Conspiracy

265.    An official or officer of an investigative state agency can be personally liable for malice, abuse of power, corruption and misuse of public office.

266.    Heaphy and LIU conspired with Flood and POLEP to purge incriminating records that evidenced predicate acts by the enterprise. In 2008, in response to Plaintiff's attorney's remark that the documents produced by Defendants upon request, were missing pages, were out-of-sequence, had large gaps, Defendants Heaphy, investigator for LIU, and Mr. Thomas Heckert testified that LIU and POLEP "purged their records". The purge of documents allegedly took place in 2006, in the midst of

67

their investigation of the Plaintiff. Some of the out-of-sequence documents that

"survived" the purge, were redacted, unsigned and undated, some were not in

evidence, yet, both were used and relied on as "preponderance of the evidence" in

support of charges that Plaintiff "intentionally violated federal CLIA Law", which was

fraudulently mislabeled, "determined" and enforced as "medical misconduct" under

Education Law 6530(16) and (2), where each false label "ALONE", allegedly,

"justified the license revocation" and penalty. However, HEAPHY also testified that

her records were maintained in digital format. Yet, she never produced them when

requested by Sills, Plaintiff's former attorneys and Ruskin Defendants, complicitly,

never requested them.

### RMF Defendants and Their Relevant Acts and Conspiracy

267.    A litigant's private attorney can be personally liable for conspiracy to cover

up government's fraud and abuse against his client.

268.    RMF Defendants conspired with State Defendants to ignore, legitimize and

fully support State's operation of the CLIA Program as a criminal enterprise, their

mispronouncement of jurisdiction, their fraudulent investigations and prosecution, and

to mislead the client, to conceal, delay and block discovery, to cover up DOH's

massive fraud upon the court, and to obstruct justice..

269.    While representing Plaintiff at the 2008-2009 hearing, RMF attorneys

were fully aware of, but willfully ignored, United's extortionist letters, its partnership

in crime with the DOH and their acts of racketeering regarding CLIA and he fully

complied with DOH's cheating the judicial system.

270.     As in *Chevron Corp. v. Donziger,* 1:2011 cv 0069, Ruskin and DOH co-Defendants formed a racketeering enterprise through which they repeatedly committed a litany of predicate offenses, analogous to what Judge Kaplan found Mr. Donziger and his co-defendants did.

271.     In 2008, RMF became, and, since 2008, continuously remained willful participants in the cover-up of DOH's corrupt enterprise, also in violation of 42 U.S.C. 1985. Below are examples of their acts of conspiracy in furtherance of their participation in the criminal enterprise:

a) partaking in Cuomo's Office fraud and cover up of DOH's pattern of fraudulent use of documents, Bateman agreed with, facilitated, and allowed Bloch to concoct a certification of an uncertified document, Exh. 12A, by "making a copy" of a certification of another document, and using it as certification, and, on appeal, allowed Leone and Cuomo to include it in the Appellate Record. He aided and abetted fraud, by legitimizing Bloch's and Leone's fraudulent certification of a document that was never certified nor scrutinized. (see Exhibit, p. 38-39)

b) Defendants Bateman and Good refused to move the case to federal district court under federal question jurisdiction. Deceivingly, both counsels spent time on the phone, several times, to misstate the law and to mislead Dr. Anghel that the DOH did have jurisdiction over the CLIA charges, and did so after the BPMC conceded in its Order of license revocation that Plaintiff's POL fell under federal, not state jurisdiction. (Exh. Det&Order, p. 7, ¶ 4) http://w3.health.state.ny.us/opmc/factions.nsf/cd901a6816701d94852568c0004e3fb7/36f1305f7ad2c8c28525737f006655e4/$FILE/HRG%20171848.pdf.

c) Bateman intentionally failed to timely recall three proven perjurers (Mc Kinnon or "Patient B", Stephano's informant; Stephano; and Petranker) to impeach them. He intentionally failed to enforce subpoena/s issued, and/or allegedly issued by him to two of proven perjurers – Mc Kinnon and Stephano. Instead of recalling and impeaching Stephano, he complicitly accepted a second perjurious Affidavit of Stephano, which acknowledged only 1/10, a fraction of his fraud, i.e. 23 false, planted dates of service as "errors". Later, Plaintiff documented upward of 240 false dates, false services, and false descriptions of services;

d) He delayed for 5 months, until March 2009, the last day of the hearing, the

issuance of a subpoena to an impeachable witness, so-called "Patient B", (actually, an informant for Stephano, posing as patient) who was a proven perjurer at the hearing, and, in complicity with Cuomo and Leone, failed to include his alleged subpoena in the Appellate Record or to enforce it when she didn't show up;

e)  Complicit with DOH, Bateman refused to argue restrictions on permissible state regulation despite the unambiguous CLIA Law and testimony of Mr. Heckert, Director of POLEP, (Physician Office Lab Eval. Program), *supra*, that the State had no jurisdiction over POLs; never argued any of DOH's *ultra vires* regulation, e.g. billing fee disputes or its discriminatory punishment;

f) Complicit with DOH, Bateman refused to raise prosecutorial misconduct which included Bloch's falsification of 52 needle code descriptions from one needle to boxes of 100 needles, in "support" of her false charges of fraud, 18 U.S.C § 1512;

g) It took Bateman five months (from July till December of 2008) to announce, at an intrahearing, that he obtained (exculpatory and impeachment) documents, from the NYS Dept. of Education and Licensing and from Stonybrook University. In December of 2008, after he made the announcement, which the Committee was not told about, he withheld the proof for three more months, until the last day of the hearing. The documents, herein attached (as Exh. p. 31-34), were certified proof that Bloch, prosecuting Plaintiff for fraud, based on witness "Patient B"'s "credentials" was fraud upon the court.

h) With intent to mislead his client, Bateman misstated that (he believed) exhibit 12A (a falsely-alleged printout of the Original CD) was certified, when he knew, from the Pre-hearing, that it was not, and that it was he who allowed Bloch to concoct a "certification", by remaining silent when Bloch offered to attach a copy of a[nother] certification (of Exhibit 12) and put it in front of the uncertified document – Exh. 12 A. Exhibit 12A, an uncertified printout of an unknown CD, contained different false evidence than the "Original CD".See Exh. P 38-39.
        From the Intrahearing:
Ms. Bloch: "It's a printout of the CD".
Mr. Bateman: … "I have an objection".
Ms. Bloch: "No certification". Ms. Bloch: "Here. I'll show you. This copy, I'll just make an extra copy of the certification."

Later, when Plaintiff wanted to contest the fraudulent compilation of the appellate record (on several levels), which both Defendant Bateman and Defendant Leone jointly "put together", with the full knowledge of Defendant Cuomo, he misled Plaintiff, misstating that (he believed) 12A was certified, when he knew it was not, thus confirming once again his complicit agreement with Bloch and Leone to cover up DOH's fraud. (R. 8137)

*United States v. Sarantos*, 455 F.2d 877 (2d Cir. 1972) (observing that a lawyer is liable for assisting in illegal conduct if it can be proven that (1) there was subjective awareness of a high probability of the existence of prosecutor's illegal conduct; and (2) the lawyer engaged in a purposeful contrivance in order to avoid raising the prosecutor's illegal conduct.)

By failing to object to Bloch's and Nemerson's fraud, and also, to Leone's and Cuomo's fraud, Bateman assisted DOH's and AG's fraud and cover-up. Then, he misrepresented and misled the Plaintiff that her stipulation to the [fraudulent] record was the only way to file an appeal.

i) Complicitly, Bateman aided and abetted DOH prosecutors' fraud upon the court and upon his client. Never objected to DOH's use of unscrutinized CDs to manipulate expert testimony, so Bloch repeatedly offered Petranker "his own CD", to read DOH's talking points from, during his 4 days of testimony.. [T. 1255, 1437] **Dr. Petranker**: "I have my own copy/CD".

j) He refused to settle the record, refused to seek to hold A.G. Defendants Cuomo,  Leone, and DOH Defendants Bloch, Rosenthal and Nemerson in contempt of court when they refused to turn over CD documents ordered by the court, including Petranker's CD, and ALJ's CD and a copy of the tampered Original CD;

k) complicitly, Bateman complimented Defendant Bloch and expressed doubt, for the record, that Prosecutor Bloch knew anything about Patient B's perjury and criminal background, rather than holding the prosecutor accountable for her duties to investigate the background of both of her witnesses, Patients A and B, who were both criminals, and also for her conspiracy to suborn Stephano's perjury, and for her statutory duties to turn over exculpatory and impeachment evidence; complicitly he failed to demand that Bloch turn over exculpatory evidence re: the criminal activity of Patient A, another patient, which Defendant Bloch refused to disclose; he refused to impeach witnesses who were proven perjurers and known criminals.

l) intentionally, with intent to mislead, Defendant Bateman used wire to misinform his client that DOH had no obligation to disclose exculpatory evidence, when the statute PHL 230 d1[19] actually provided for mandatory disclosure.

**E-mail** In a message dated 11/1/2010 3:29:46 P.M. Eastern Daylight Time, abateman@rmfpc.com writes: *the courts have even said that OPMC has **no** obligation*

---

19. *N.Y. PBH Law 230 (d-1) Disclosure of exculpatory evidence. After service of the charges upon the licensee,  counsel for  the  office  of  professional  medical  conduct* ***shall, as soon as practicable*** *and **on a continuing basis**, provide the licensee with any information or documentation in the possession of the office of professional medical* ***conduct  which  tends  to  prove  the  licensee's  innocence.***
     **http://codes.lp.findlaw.com/nycode/PBH/2/2-A/230**

*to produce exculpatory evidence to the Respondent...*

m) Bateman refused to release documents requested between 2011-2012 by Plaintiff and her attorneys, alleging a "lien". His refusal to allow Plaintiff access to crucial documents continues to impair her defense against the DOH and AG and her claim against him. Specifically, she sought all his correspondence, including e-mails, with Mr. Wenik/Sills, (her former attorneys), with Defendants Bloch, with Leone, AG's Office, with Mr. Lawless, an expert in prosecutorial misconduct hired by Plaintiff when Bateman refused to do what he was paid to do; with MLMIC and PRI, her insurance carriers.). Around May of 2012, Plaintiff renewed her request for his records. Two weeks later, she was sent, for the first time, the breakdown of the bills going to "the lien". The firm conditioned such release on payment, by Plaintiff, of so-called unpaid legal fees which, largely, were sent to her for the first time, in 2012, two weeks after Plaintiff requested her file.

*Sigafus v. Brown*, 416 F.2d 105 (7th Cir. 1969) deprivation of papers needed for use in judicial proceeding constitutes denial of due process and may violate § 1983.

n) used his most valuable defense tool - cross-examination of 3 witnesses: Heaphy, Stephano, and Petranker – not to defend his client, but to defend the State against his client, by falsely establishing that the State's and United's conduct was authorized under the law, thus covering up their unauthorized acts.

o) Bateman acted in concert with, aided and abetted DOH's fraud, by refusing to impeach Petranker, after he lied twice in direct and recanted in cross[20]. When Plaintiff asked him around December 23, 2009 why he didn't attack Petranker's credibility or impeach him, he complicity answered: "He corrected himself". As a result of his complicity with the DOH, and deliberate decision not to impeach his credibility, Petranker was found a *highly credible witness* and his testimony that the length of the needle is significantly different, as falsely testified by "Patient B" and twice falsely validated by himself in direct, was cited as preponderance, respectively, substantial evidence that Plaintiff committed fraud!! And Defendants Rose, Mercure, Kavanaugh, Lahtinen and Garry upheld the fraudulent charges based on Petranker's direct testimony, even though he recanted in cross!!!

---

20**Ms. Bloch:** *I would ask you, if you could, to describe for us what...difference there is between a caudal epidural and a facet joint injection.* (R. 1490 - T. 680, 9-14) ...**Dr. Petranker:** *The needle is significantly longer with an epidural.* (R. 1491-T. 682, 4-6) For the second time, in direct, **Dr. Petranker** again testified: *There is a substantial difference between the ... length of the needle* between what I would use for a facet joint block and what I would use for an epidural. (R. 1542, T. 889 12-19) But in cross, when asked the same question (at Plaintiff's request), **Dr. Petranker** answered that typically the length of an epidural needle would be the same as a facet needle: ...*The typical epidural needle is about three-and-a-half inches long. ...With the facet joint block type of needle...typically you start with a three-and-a-half inch needle AS WELL.* **Mr. Bateman:** *Typically, in both instances you would use a three-and-a-half inch needle?* **Dr. Petranker:** *Yes.* (R. 1848-1849)

(p) Complicitly, Bateman assisted prosecutors' felonious conduct when he agreed to discuss prosecutor's fraud off the record, instead of making a record of her fraud. He never informed and nobody informed the Committee about DOH's fraud.

**Judge Zylberberg**: *The Committee had been left out of all of these discussions (R. 600)... But the hearing committee has no idea that this – these are the facts that have come out at the intra-hearing, so they don't know. (R. 609)...(R. 520-525).*

(q) Complicit with her opponents, Bateman did not enforce a subpoena, (dated April 9, 2008), issued by her former attorneys (Sills) to United, to produce original billings, when it became clear that United's spreadsheets were fraudulently admitted under perjury, as "accurate", while actually containing hundreds of false data. RMFs' enforcement of the subpoena would have proved that United committed fraud and perjury, that the billing spreadsheets compiled by United were manipulable compilations of false dates of service, false services and false descriptions of services which Plaintiff had never billed for. Stephano would not have been found a credible witness if Bateman had impeached him for his fraud.

. (r) Bateman conspired with the DOH to cover-up its fraud upon the court and upon his client, when, at the12/3/2008 Intrahearing, out-of-the-blue, he falsely conceded, "for the record", that the disagreement about the CDs was resolved:

**Mr. Bateman**: "I think we cleared up the confusion as to the original disk and the copies of the disk." (IHT. 339), which he knew was false and not at all "cleared", but still highly contested. As attorney and former prosecutor, he fully knew that using documents outside the record, including Petranker's CD/s, constituted fraud upon the court. His false concession proximately, substantially, foreseeably hurt Plaintiff, prolonged her injuries, and interfered with the delivery of justice, because, later, between 2010-2011, Leone, then AAG, opposed Plaintiff's motions to compel and her Art. 78, seeking "all the CDs", quoting his concession, tas even <Plaintiff's> own counsel conceded that "the disagreement about the different CDs was resolved". And, the Appellate Division, relying on Leone's quote of his treasonous concession, denied plaintiff's motion to compel and appeal.

(s) Bateman conspired, acted in concert with the DOH, aided and abetted and covered up Bloch's falsification of the description of a billing code, (A4215), from a single needle to 100 needles per box - a violation of 18 U.S.C. §1512(c)(1)(2)[21], which appeared 52 times, by refusing to timely argue fraudulent prosecutorial misconduct, on the record, not "errors" on the corridors, and by refusing to make a detailed record of her fraud. Instead, he made a misleading argument in his Summation Brief, repeating Bloch's "explanatory" plain lie.  Specifically, Bateman

---

21. 18 U.S.C. §1512(c) Whoever corruptly - (1) alters, destroys, mutilates, or conceals a record ...with the intent to impair the object's integrityor (2)...obstructs, influences.. impedes any official proceeding...

wrote: *Even the Department had to amend their charges to acknowledge an error in* their own *understanding of the description for supply codes.* (Summ. Br., p. 13), where "understanding" in lieu of altering evidence in a document that fraudulently went in as "business record" is obstruction of justice, and a violation of 18 USC §1512(c)(2). As a direct result of Bateman's failure to make the case for fraud, and of his intentional mischaracterization of Bloch's fraud, as "error", and of his firm's defense and cover-up of DOH's fraud, the Committee was never told about Bloch's tampering with evidence and all courts ignored it. In this regard, the 2nd Circuit said:

*United States v. Benjamin*, 328 F.2d 854 (2d Cir.) (opining that the lawyer could not consciously disregard readily available information which demonstrated the illegal nature of the prosecutors' conduct. cert. denied, 377 U.S. 953 (1964).

(t) Bateman and his firm aided and abetted DOH's fraud and cover-up, by intentionally allowing and failing to correct an argument made by his associate in Plaintiff's  November 2008 motion for a mistrial. Attorney William McDonald argued in that motion that, in the CD that Bloch provided to his office, unlike the gloves, which falsely appeared as 100 per box instead of a pair, <u>the needles were correctly described as one</u>. Bateman knew that it was only the Original CD - not his office CD – that which Bloch projected before the Committee, and that the Original CD was different than his office CD, as he had already argued on 9/23/2008, on the record, and that, it was only in the "Original CD" that the description of the needle code appeared, falsely, as boxes of 100. In their March 30, 2010 Affirmation in Reply to Plaintiff's motion to compel the disclosure of all of the CDs, Leone, then AAG, and Cuomo, then A.G., exploited his false concession and argued that:

"Inasmuch as the supposed issue of discrepancies between the Original CD and copies was not preserved, it was waived" as unpreserved. (Exh. Attached).

(u) Bateman and his firm acted in concert, aided and abetted DOH's fraud. Their conspiracy to cover-up DOH's fraud and to obstruct justice proximately, substantially, foreseeably resulted in the denial of Plaintiff's motion for a mistrial – an immense harm to Plaintiff, which she is still suffering today.

(v) Bateman aided and abetted DOH's use of Stephano's perjury. He never argued that Stephano, a proven perjurer at the hearing, committed perjury threetimes, twice in two Affidavits (dated December 2007, and January 2009, herein attached) and during his Sept. 2008 testimony before the Hearing Committee. When Plaintiff asked Bateman why not, he said: "I can't say that he lied!"

(x) Bateman aided and abetted DOH prosecutors' fraud upon the court and upon Plaintiff, by agreeing to withhold from the Committee prosecutors' fraud.

74

(y) Bateman used cross-examination of adverse State witnesses to legitimize their unauthorized investigation of Dr. Anghel, and did so even after 2 witnesses conceded that they lacked jurisdiction. (e.g. asking Defendant Stephano, re: his CLIA investigation): "There was nothing stopping you from pursuing this ... was there?... when in fact the law was stopping him, or asking LIU investigator Heaphy: "But when it was in your jurisdiction?" after she admitted [5 times] that she had no jurisdiction to investigate Dr. Anghel. In so doing, Bateman bolstered State's unauthorized prosecution and interfered with Dr. Anghel's private right of action conferred under §1983 against a State violation of the US Constitution or of the Interstate/Dormant Commerce Clause. Specifically, by not arguing lack of jurisdiction or by refusing to take her license case to federal court for federal preemption, Bateman, Good, Ruskin deprived Dr. Anghel of her right to end the unauthorized state proceeding, by declaratory and injunctive relief.

(z) Complicit with the DOH, Bateman cross-examined Petranker about Stephano's [fraud], rather than cross-examining each for their own fraud.

(a') Complicit with DOH, Bateman refused to file a motion to dismiss charges for malice and fraud upon the court immediately after fraud upon the court became obvious, and/or immediately after expert testimony, between August-September of 2008, further confirmed that no fraud was committed:

**Dr. Petranker**: *Similar to the other tests we just spoke about, the test was done, then it was documented ...Again, the test would be done and again documented.* (R. 2136). Patient D and "on all the cases": **Mr. Bateman:** *...the strips...the blood tests.* **Dr. Petranker**: *Yes. I reviewed them and then crosswalked it back into the medical record.* **Mr. Bateman:** *And they matched up; is that right?* **Dr. Petranker**: *The ones I reviewed did.* **Mr. Bateman:** *...did you do that for all the patients that you examined charts on and have testified or will testify?* **Dr. Petranker**: *I did it across all the cases and similarly the ones that I checked were, indeed, documented in the medical record.* **Mr. Bateman:** *Okay. Indicating the lab tests were, in fact, done?* **Dr. Petranker**: *That's correct.* (R. 2170)**Dr. Petranker**: *The labs were done, urine analyses were done, EKGs were **done, abdominal sonography, as an example, all these tests were done.** (R. 2237)

<u>Equitable tolling suspends the statute of limitations for RICO claims</u>

272.      Despite Plaintiff's exercise of due diligence in pursuing her claims and the

discovery of her claims against State, private parties, and/or Federal Defendants, she

was unable to obtain vital information bearing on her (RICO) claims. State, United,

RMF, concealed, purged, or withheld evidence. RMF systematically discouraged

Plaintiff from pursuing her claims and prevented her from obtaining information

bearing on her claims, which prompted her to hire Atty. Lawless. Even then, Bateman

manipulated and controlled her, and Lawless, thus preventing him from doing his job.

<u>Equitable estoppel-fraudulent concealment-further suspends the SOL for RICO claims</u>

273.     Repeatedly, Bateman and Good downplayed prosecutors' fraud as Plaintiff's

"beliefs", making her think that she did not have enough evidence for a

case of prosecutorial misconduct. Repeatedly, Bateman threatened to withdraw as

counsel if Plaintiff wanted to pursue prosecutorial misconduct. Plaintiff reasonably

feared that Defendant Bateman would make good on his threats. Under duress/threats,

Plaintiff was prevented from bringing earlier suit. See e-mails below:

.

From: abateman@rmfpc.com
To: Painfree4thee123@aol.com
Sent: 11/4/2010 3:19:50 P.M. Pacific Daylight Time
Subj: RE: Motion for Leave to Appeal

**Mr. Bateman**: *You believe that attorneys and others involved in your Hearing and appeal proceedings have engaged in misconduct, the details of which I don't need to go into here. You know that I do not agree that the evidence supports your conclusions. I have tried to present your defense, inspite of our disagreements. Lodging formal complaints concerning your beliefs about these people will not help your case at all and as they are not supported by evidence, I don't believe will result in any action being taken against them. I spend my time defending people who have been charged with all kinds of allegations, and many times they are wrongfully charged, based upon unsupportable allegations. I don't want to be associated with such allegations, directly or indirectly. If you decide to make such allegations, it is your prerogative to do so. **However, I may have to seek to withdraw from representing you if you do**. I truly hope that does ....*
     In a message dated 11/3/2010 10:18:25 A.M. Pacific Daylight Time, abateman@rmfpc.com writes:

**Mr. Bateman**: *I hope this doesn't even need to be discussed, but in light of the complaint you made to the AMA about Dr Petrenker and the ABA ethics rules you*

*forwarded to me, **I need to make sure that you aren't considering any similar complaints re DOH, OPMC or AG staff. I cannot stay on this case if that is done.** If this wasn't even on your radar, I apologize, but its something that crossed my mind when you sent me the ethics rules and I wanted to prevent any potential problem.*

274.    Bateman and Good took active steps to prevent the Plaintiff from timely

bringing suit. They firmly opposed Plaintiff's request to argue prosecutorial

misconduct, falsely alleging that "<she> didn't have a case", and "it is not that clear".

**Mr. Bateman:** *I have fundamental disagreements with the allegations you have made concerning fraud, cover-ups, perjury etc. (Jan 8, 2011 e-mail)*

(b') Bateman repeatedly argued Bloch's fraud upon the Court off the record, in the corridor outside the room. If there wasn't more proof of DOH's fraud, it's because he refused to make a complete record of its fraud.

 (c') In May of 2010, Defendant Bateman refused to move for an Order holding the DOH in contempt of court for failing to produce the tampered CD "copies", which was crucial evidence of fraud upon the court.

 (d')  Complicit with the DOH in its goal to cover up prosecutorial misconduct, Bateman, (himself a former prosecutor in Suffolk County, N.Y.), repeatedly deceived his client, while asking her to trust him. Intentionally, he never objected to, and refused to argue illegal searches and seizure, which had been fraudulently conducted by LIU and OPMC outside their jurisdiction, under pretense of authority. LIU's and OPMC's use of hospital tools under Article 28 was a crucial argument that was enough to throw out the entire case:
*In a message dated 1/15/2010 6:41:24 P.M. Pacific Standard Time, abateman@rmfpc.com writes:*

**Mr. Bateman:** ... *I do have a concern that you and I will not be able to reconcile disagreements. For ex, the Heaphy "jurisdiction" issue. Do I have your word that you will listen to me and consider what I say regarding the arguments on appeal and keep in mind that I have been doing this for a long time?*
--------------------------
*Sent from my BlackBerry Wireless Handheld*

(e') Instead of holding Bloch accountable for her use of two criminals[22] as

---

22. "Patient B" (an informant of Stephano) committed two crimes – lied under Oath about her credentials as a "critical care nurse" (committed perjury), and, through her testimony "as a nurse", she committed the crime of practicing nursing without a license. Both perjury and practicing without a license were 2 criminal acts which Patient B had committed with

witnesses against his client, Bateman was complicit with the DOH prosecutors, in the cover-up of their misconduct and, for the record, he stated, clearly, that he "did not believe that <prosecutor> Bloch knew anything about this". Grateful for his complicit vote of confidence, to the express detriment of his client, Defendant Bloch thanked him for "that".

(f') When Bloch stated that she knew, partly, why Patient B refused to show up when subpoenaed, Bateman aided and abetted Bloch's concealment of evidence, and listened in quietly, instead of moving for an order to enforce the subpoena and Plaintiff's rights under PHL 230 d1, to disclosure, on a continuous basis, of any exculpatory evidence in her possession that tended to prove physician's innocence.

(g') Defendant Bateman refused to write an Affirmation in Reply to his 2nd Motion to Compel, but had Plaintiff write an affidavit as if she were a *pro se* appellant, which he intentionally filed four days late, without seeking permission for late filing … saying: "I would rather beg forgiveness then ask permission", but never did either. See e-mails dated 9/17/2010 As a result of his late filing, the Appellate Division was free to dismiss the motion and did dismiss Plaintiff's 2nd motion to compel.

275.    Bateman's and Good's opposition to arguing prosecutorial misconduct caused Plaintiff to rely on Bateman's' threats and improper conduct and forced her to forebear timely bringing suit.

(h') When LIU and POLEP agents testified they purged their records, Defendant Bateman refused to request their digital records and to seek those records under FOIA, or under the state **statute P.H.L. 230 d(1).**

276.    RMF Defendants, continuously since 2008, during and after their representation of Plaintiff, committed a pattern of predicate offenses, to cover-up State's misconduct, by downplaying it, misleading Plaintiff about it, interfering with/refusing/obstructing her plan to raise it through another attorney expert in prosecutorial misconduct, duplicitously making the case for, or defending the DOH and United, refusing to seek documents under FOIA, refusing to raise lack of

---

the full knowledge of Bloch and Bateman. As a prosecutor, Bloch was certain to have run, or very well should have run a background check on "Patient B" prior to her testimony, especially since she has unlimited access to the licensing records of the Dept. of Education and Licensing.

jurisdiction over CLIA, etc., and as such, have proximately caused Plaintiff irreparable harm, which is continuing.

### Defendant Douglas Good and his Relevant Acts and Conspiracy

277.    When, after her license was revoked, Plaintiff asked Senior Partner, Good, to raise prosecutorial misconduct, regarding DOH's use of CD "copies" containing different false evidence, coauthored by the prosecutor and United, he misled her replying: "What's that? I never heard of prosecutorial misconduct". When Plaintiff reminded him of Nifong case, he quickly dismissed her, saying that what Nifong did happened before a judicial proceeding started, unlike her case!!

278.    Good and Bateman jointly and intentionally deceived her and insisted DOH had jurisdiction over CLIA charges. RMF billings show research done by Mr. Ruskin on CLIA, therefore awareness of the firm that the DOH lacked jurisdiction over CLIA.

### Defendants Rose, Mercure, Lahtinen,  Kavanaugh, Garry and their acts of conspiracy

279.    A public official can be personally liable for abuse, corruption or misuse of public office, as these acts are not part of his official sanctioned duties.

280.    Since 2009, continuously, jointly and severally, Defendants Rose, Mercure, Kavanaugh, Lahtinen and Garry, along with other judges, not sued at this time, have agreed and conspired to engage in judicial trespass. They acted *ultra vires* to uphold[23] "on the merits", the NYS DOH's null and void, fraudulent, discriminatory, and retaliatory determination and enforcement of Spending Clause CLIA law and of other inapplicable laws. Urged by Defendants Cuomo, Leone, and Schneiderman, since

---

23http://w3.nyhealth.gov/opmc/factions.nsf/cd901a6816701d94852568c0004e3fb7/36 f1305f7ad2c8c28525737f006655e4/$FILE/COURT%20171848.pdf

2011, and complicit with these Officials of the State, they refused to grant Plaintiff the Equal Protection of the Laws, and, instead, blocked her access to the court and evidence, by denying her a TRO, injunctive relief, two motions to compel, her Article 78 petition/appeal, and her 2011 motion to reconsider.

281.    Since 2009, they have engaged in judicial misconduct, case-fixing, conspiracy to usurp their power and to review and issue *ultra vires* orders on a Spending Clause (CLIA) statute "on the merits", to ignore all jurisdictional bars[24],, to violate the Interstate Commerce Clause, to discriminate against Plaintiff, by upholding DOH's discriminatory and retaliatory invocation of inapplicable laws, which strips them and the State of immunity[25], for conspiracy to apply the wrong standard of review to obtain an illegitimate outcome, to violate her First Amendment right to petition the court, for conspiracy to block Plaintiff's right of access to exculpatory and impeachment evidence, and to cover up fraud upon the court and Plaintiff.

282.    On July 28, 2011[26], acting outside their statutory appellate jurisdiction, the five Defendants, unanimously and dishonestly, upheld the fraudulent revocation of Plaintiff's medical license and the $240,000 penalty.
http://w3.nyhealth.gov/opmc/factions.nsf/cd901a6816701d94852568c0004e3fb7/36f1305f7ad2c8c28525737f006655e4/$FILE/COURT%20171848.pdf

283.    The result of the five Defendants' fraud and conspiracy is that every

---

24. *NYS Unified Court System, Part 1200, Rules of Professional conduct, Rule 5.5 Unauthorized Practice of Law provides: (a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction.*

25 As stated by the United States Supreme Court in *Piper v. Pearson*, 2 Gray 120, cited in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872), '[w]here there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction.'
26. The five Defendants affirmed their Decision on reconsideration, around November of 2011.

subsequent court has adopted their distortions and relied on their scheme, to keep the

scheme going, and to keep the Plaintiff hostage to their criminal enterprise.

284.    Defendant Rose, on behalf of all judges, in a slip opinion, wrote, in part:

> *Matter of Anghel v. Daines*, 86 A.D. 3d 869, 927 N.Y.S. 2d 710 (3d Dept 2011).
> The Appellate Division was "unpersuaded by Dr. Anghel's assertions that various
> evidentiary and procedural errors deprived her of her right to a fair hearing and due
> process. *Id.* It also noted (p.5) that substantial evidence supported the Committee's
> decision to sustain the specification alleging that petitioner willfully failed to
> comply with federal law and regulations governing the practice of medicine (see
> Education Law § 6530 [16]). Namely, the Clinical Laboratory Improvement
> Amendments of 1988 (hereinafter CLIA) and its regulations require physicians to
> obtain a CLIA certificate before operating a physician office laboratory (hereinafter
> POL) (see 42 USC §263a; 42 CFR part 493)....Thus, the record reveals substantial
> evidence to sustain the specification alleging fraudulent practice based upon
> petitioner's operation of her POL (see Education Law §6530 [2], [16]). *Id.* at 872.

> a.    Defendants Rose – and all five judges of the appellate panel of the State
> Appellate Division[27]– lacked jurisdiction not only to review CLIA-related
> charges/orders (given  U.S. Courts of Appeals' exclusive appellate jurisdiction, 42
> U.S.C. §263(a)(k)) but also the remaining BPMC's invalid orders, reached in
> complete absence of statutory jurisdiction, in violation of every statutory mandate,
> including *statutory condition precedent*, in violation of the Equal Protection Clause,
> of federally-protected rights and federal laws, Commerce Clause, Fourteenth
> Amendment, Title II and Title VI of the Civil Rights Act of 1964, the Supremacy
> Clause, federal CLIA law and federally-protected rights, pursuant to 42 USC 1985
> and through fraud upon the court, all of which renders the Appellate Decision null
> and void.

> b.    Jointly and severally, Defendants ignored criminal conduct of Bloch and
> Nemerson in manipulating expert testimony. They deliberately ignored Bloch's
> criminal conduct – her falsification of 52 billing codes, and failed to report it. Their
> curative measure was to remove the fraudulent "Factual Allegations", instead of
> dismissing for fraud upon the court, and reporting these crimes to authorities, thus
> covering up criminal acts and obstructing justice. The five Defendants deliberately
> ignored Stephano's two perjurious affidavits and testimony, Bloch's, Leone's,
> Rosenthal's, perjurious Affirmations, Cuomo's and Schneiderman's ratification of
> Leone's  perjurious Affirmations; they adopted Defendant's Petranker false
> statements, and wrote: "Petranker ... a specialist in pain management", (p. 6)

---

[27]http://w3.nyhealth.gov/opmc/factions.nsf/cd901a6816701d94852568c0004e3fb7/36f1305f7ad2c
8c28525737f006655e4/$FILE/COURT%20171848.pdf

despite the Record showing zero credentials, (see Exh. Petr. Testimony). They acknowledged documentary proof of Patient B's perjury, but upheld Allegations of fraud based on her perjured credentials Allegations B4 and B7. They conspired to manipulate the outcome, and actively engaged in case-fixing. 18 U.S.C. § 1512.

    c.    Defendants Rose, Mercure, Lahtinen, Kavanaugh and Garry engaged in misleading conduct to obstruct justice. They acted in concert with one another, and aided and abetted the DOH Defendants, and Cuomo, Leone and Schneiderman, and unanimously "concurred" to cover up their fraud and to obstruct justice. Corruptly, they reached an agreement to ignore State Defendants' regulatory and law-enforcement trespass and fraud as "procedural errors" and "evidentiary errors" and to mispronounce their jurisdiction, and to intentionally use the wrong standard of review - substantial evidence rather than what it was – substantial fraud upon the court. They ignored their lack of jurisdiction over the merits of compliance with the Spending Clause CLIA statute and wrongfully denied Plaintiff prospective relief and her motions to compel and upheld the $240,000 penalty. 18 U.S.C. 1512(b)(1) (3)(c)(2)(k) They reviewed fraud upon the court "on the merits". These five Defendants became <u>trespassers in law</u>.

285.    Every one of the Federal Defendants Spatt, Wall, and the 14 Defendants in the 2nd Circuit, and Holder and L. Lynch who were in a position to report these judges for treason as required by law failed to report them and, instead, relied on the five judges' treasonous decision, and acted themselves outside their law-enforcement or statutory authority to perpetuate the State crimes.

### Defendants Spatt and Wall and their Relevant Acts and Conspiracy

286.    A public official can be personally liable for abuse, corruption or misuse of public office, as these acts are not part of his official sanctioned duties.

287.    Defendant Spatt violated every express statutory prohibition when he delegated Defendant Wall to terminate Plaintiff's motion for a three-judge court, and when he alone, heard and determined a preliminary and permanent injunction, when he alone entered "judgment on the merits":

    §2284(b)(3) *A single judge shall not appoint a master...order a reference*

*...hear and determine...a preliminary or permanent injunction...or enter judgment on the merits...it is his <u>duty</u> immediately to call two other judges.*

288..    By acting alone, he acted outside his statutory jurisdiction. Furthermore, he acted outside his scope reviewing violations of federal laws and fraud "on the merits".

289.    In violation of express statutory prohibition[28] § 2284(b)(3) not to refer or hear or issue judgment on merits, around 2/27/2013, Defendant Spatt engaged in misleading conduct and conspired with Defendant Wall to "refer" Plaintiff's motion for a three-judge court to Defendant Wall to terminate it the day after she filed it, thus blocking her right of access to the proper court of jurisdiction and obstructing justice. 18 U.S.C. § 1512 (b)(c)(k)

290.    In violation of his statutory prohibition not to rule on dispositive motions, on 2/28/2013, Defendants Wall and Spatt agreed to commit trespass in law and terminate Plaintiff's motion for a three-judge court and also her motion to expedite discovery, thus blocking her access both to the proper court of jurisdiction and to evidence.

291.    In violation of his 28 U.S.C. § 2284(a) statutory duty to convene a three-judge court, in violation of his statutory duty to immediately notify the Chief Judge, §

---

28. 28 U.S.C. § 2284(a) mandates: *A district court of three judges* **shall** *be convened when otherwise required by Act of Congress*–See Title II, 42 U.S.C. §2000a–5.

§ 2284(b)(1) *Upon filing of request for three judges, the judge...***shall**, *unless he determines...three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges...judges...shall...hear and determine...*

§ 2284(b)(3) prohibits "referrals", hearing injunctions ... entering "judgments on merits": *A single judge shall not appoint a master...order a reference ...hear and determine...a preliminary or permanent injunction...or enter judgment on the merits.....it is his* **duty** *immediately to call two other judges.....*Stratton v. St. Louis S.W.R. Co., 282 U.S. 10, 15, 75....**single-judge District Court was...powerless to dismiss...on the merits**, *and should have convened a three-judge court. Schneider v. Rusk*, 372 U.S. 224 (1963). Ex parte Northern Pacific Railway Company, 280 U.S. 142, 144." *Ex parte Poresky, <u>290 U.S. 30</u>*. The judgments should have been vacated...and the case remanded for expeditious action.. *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713.

2284(b)(1), in violation of his duty not to enter judgment and dismiss on the merits, complicitly, on 5/29/2013, Defendant Spatt engaged in misleading conduct and issued an order–"on the merits", "closed"/dismissed Plaintiff's complaint <u>with prejudice</u>, thereby perpetuating, aiding, and abetting the criminal enterprise; and deliberately abandoned his duty to decide Plaintiff's motion for a three judge court; he ignored his duty to enjoin ongoing violations of federal laws, he discriminated against Plaintiff and refused to grant her the Equal Protection of the laws, and he refused to enjoin a pattern of discriminatory application of the laws, of trespass, of extortion, of arbitrary and felonious deprivation. With full intent to cover up State's discriminatory and fraudulent enforcement of CLIA, and to obstruct justice, he never addressed the State's *ultra vires* and discriminatory determination and enforcement of CLIA Law, He disposed of and never addressed Plaintiff's claims of retaliation, abuse of power, illegal searches, trespass, arbitrary deprivation, or fraud upon the court. He facilitated and perpetuated crimes against Plaintiff.

292.    With the intent to deceive, Defendant Spatt deliberately misstated, thus, made a new/false record, that the Appellate Division *unequivocally* found the license revocation *was not* arbitrary and *capricious*, despite the Appellate Division's stated standard of review being, unequivocally, *substantial evidence* – a clearly inapplicable standard for fraud upon the court.

293.    Instead of relying on Plaintiff's allegations, Defendant Spatt was complicit with State Defendants, and misquoted facts and law. He repeatedly adopted State Defendants' and United's distortions of her allegations, ignoring their criminal acts,

so he could fit his plan to dismiss crimes under collateral estoppel. Like state courts, Judge Spatt treated/called Dr. Anghel's claims of fraud and lack of jurisdiction *evidentiary errors* and *procedural errors*, subject to "collateral estoppel", all of which rendered his *ultra vires* judgment and orders null and void.

294.     Defendant Spatt intended to cover up State Defendants and their coconspirators' criminal activities and to delay/deny Plaintiff access to the courts and justice and to keep her captive to his judicial trespass.   Under Title II of the Civil Rights Act of 1964, and under controlling precedent, these ongoing constitutional violations are <u>the statutory basis for</u> a three-judge court, which all federal courts ignored or refused to consider.

295.     In Stratton v. St. Louis Sw. Ry. Co., 282 U.S. 10, 13, 18 (1930) (the U.S. Supreme Court held that a single judge may dismiss a case that warrants a three-judge district court only for lack of jurisdiction. Accordingly, a single judge is not "authorized" to dismiss a case on the merits, no matter what "his opinion of the merits might be." Ex parte Poresky, 290 U.S. at 31; see also Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 (1962) (per curiam) (a single judge may not "decide the merits"). Under the three-judge court statute it is not up to the single judge to decide whether a plaintiff's legal claims have merits.

**Appellate and LawEnforcement Federal Defendants and their acts of Conspiracy**

296.     A public official can be personally liable for abuse, corruption or misuse of public office, as these acts are not part of his official sanctioned duties.

297.     Between 2013-2015, Defendants Carney, Cabranes, Droney, Wesley, Walker,

Pooler, Lynch, Kearse, Jacobs, Wolfe, Winter, Raggi, L. Lynch, and Holder conspired

with one another to violate federal and local rules, manipulate Plaintiff's filings, deny

her access to a mandamus court, and to any court and any kind of prospective relief,

thus denying her the Equal Protection of the laws, as reflected in their pattern of

a) refusal to enjoin state officials' ongoing violations of federal law, which did not
implicate merits and entitled Plaintiff to prospective relief as a matter of law under
*Ex parte Young*, or *Monroe v. Pape*, even if a three-judge court had never existed.

b) misstatements of law and of mispronouncement of jurisdiction - all
Defendants, including Walker, Pooler, Wesley who maliciously denied Plaintiff's
4/9/2014 motion seeking a three-judge court for prospective relief, misstating that
Judge Spatt could not convene a three-judge court, because, "in 1976, Congress
vastly reduced the category subject to three-judge court". Defendants' deceitful
vagueness was an intentional misquote of the law and a deliberate omission of the
exceptions that Congress also explicitly designated. See Act of August 12, 1976,
Pub. L. No. 94-381, 90 Stat. 1119 (codified in part at 28 U.S.C. § 2284(a)) and, also,
controlling precedent. See Second Cause of Action for exceptions and case law.

c) unlawful "referrals" by Defendants' Cabranes, Carney, Droney denial on 6/25/14
of Plaintiff's May 27, 2014 substantive motion to remand for, *inter alia*, want of
jurisdiction, and their order that ***all further motions*** **be channeled to a** ***merits panel***

d) dishonest, false, unlawful instructions by Defendant Wolfe giving false instructions
to Plaintiff and her attorneys to argue her appeal "on the merits", and exerting undue
influence on her attorneys and outcome, thus forcing Plaintiff to represent herself,
denials of motions to expedite, routinely granted in similar cases, false, misleading
instructions to file a petition as a motion, falsely reassuring Plaintiff that the
"motion will be treated as a petition". Trusting Defendant Wolfe's false instruction,
Plaintiff filed her petition for a writ of mandamus as a motion, to her detriment.
Intentionally, her petition was never docketed. It was treated as a motion and was
decided and denied by a motion panel. After her so-called petition was denied "on
the merits" and Plaintiff sought to file a petition to rehear, Defendant Wolfe, relying
on her own trickery, instructed her Staff to defect Plaintiff's petition to rehear *en
banc,* because the so-called petition "lacked a docket number". When Plaintiff
realized she was defrauded of her opportunity to be heard, in February of 2014, she
requested by letter that her Petition be docketed, but Defendant Wolfe never replied
to her request and the Court never docketed her so-called "petition"; a pattern of out-of-
scope orders on substantive motions; unlawful referrals- "referring" (as per 6/25/2014
invalid order), the 7/9/2014 substantive, dispositive motion to the "merits panel", in
violation of L.R. Section 0.18, L.R. 27.1.(c) and of Rule of Law; a pattern of

mispronouncement of jurisdiction, and again, on 7/15/2014, Defendant Wolfe issued another *ultra vires* Order denying, as "moot", a substantive motion.

e) <u>manipulations of Plaintiff's filings</u> to influence and perpetuate an illegitimate outcome and to deny her the Equal Protection of the Law. Aware that the 12/27/2013 petition was undocketed, that an undocketed filing entered as a motion is a motion, not a petition, that an undocketed "petition for a writ of mandamus" was procedurally improper, and improperly before a motion panel, with the full intent to deceive Plaintiff, in their Order dated January 29, 2014, Defendants <u>Cabranes and Carney</u> falsely referred to the manipulated petition, a *de facto* motion, as "petition for a writ of mandamus":

> … it is further ORDERED that Appellant's request for a writ of mandamus is denied. See Linde v. Arab Bank, PLC, 706 F. 3d 92, 107 (2ⁿᵈ Cir. 2013).

f) <u>*ultra vires* review of fraud upon the court "on the merits"</u> On 1/20/15, Defendants <u>Raggi, Cabranes, Winter</u> affirmed "on the merits" and concurred with Defendant Spatt's violation of the Constitution and with his deliberate indifference to State's unauthorized and discriminatory application of the laws including CLIA. They disingenuously and dishonestly praised fraud upon the court - adding: "for the reasons stated in the District Court's thorough and well-reasoned orders", thereby validating his case-fixing, cover-up, and *ultra vires* review of State Defendants' violations of federal law, rights, and fraud "on the merits". They wrongfully rubber-stamped the void order below by Summary Order, chosen for its non-precedential value, thus confirming their <u>discriminatory animus only against Plaintiff</u>. They agreed with Defendant Spatt's unlawful denial of prospective relief under *Ex parte Young* for *inter alia* Eleventh Amendment immunity! Their discriminatory animus against Plaintiff is even more obvious in how they ruled differently in similar cases. For example, in *Tsirelman v.* Daines, 14-2154-cv, decided July 24, 2015, Defendants Winter, Walker, Droney agreed with Tsirelman that Eleventh Amendment immunity was no bar to prospective relief. But in Plaintiff's case, each and every one of them denied Plaintiff the Equal Protection of the law for the same prospective relief she sought in her motions and appeal, under *Ex parte* Young. Indeed, Defendant Winter was one of the three appellate judges who praised Defendant Spatt for his discriminatory application of the laws: "for the reasons stated in the District Court's thorough and well-reasoned order".

g) <u>violations of their statutory, law-enforcement, and constitutional duties</u> (all 16)

h) <u>ignoring dispositive motions to remand, intervene, and appoint special prosecutor</u>, and deliberate indifference to violations of Title II and Title VI of the Civil Right Act of 1964

i) <u>refusal to even mention</u>, let alone intervene and enjoin State Officials' violations of the Commerce Clause and their <u>discriminatory and unauthorized enforcement of</u>

the Spending Clause CLIA statute and of other inapplicable statutes, which hold Plaintiff's office practice to much higher, hospital operating room standards;

  j) unanimously wrongful agreements to immunize State violations of federal laws,

  k)  dereliction of duty and selective, discriminatory refusal to enforce the laws of the United States by the Department of Justice - Defendants' Holder, Loretta Lynch - as they loudly do in other cases,

  l) refusal to perform duties/protect rights, intended to block access to the courts, and to prevent Plaintiff from getting her property and freedom back and to irreparably injure.her

  m) interference with Plaintiff's First Amendment Right to petition the Court – "telling her what she must say": "remove the word petition from her petition to rehear", and deprived her of Equal right of access to the courts

  n) wanton denial of any and all relief:  Defendants Carney and Cabranes denied Plaintiff not only her right to prospective relief by a three-judge court, but any kind of prospective relief, even by one judge, which Plaintiff sought under Ex parte Young, which is not a discretionary act. With obvious discriminatory animus toward Plaintiff, on or around 8/6/2014, Defendant Cabranes issued an order wantonly striking from the Docket Plaintiff's **timely** reply brief for **untimeliness!**

298.     Federal Defendants' acts amount to a pattern of intentional discrimination, or discriminatory animus against Plaintiff's class-of-one, and plain persecution. Their conspiracy to deny Plaintiff access to the courts solely on account of her class-of-one proximately, substantially, foreseeably perpetuated the State's wrongful deprivation of her liberty and property rights.

299.     In violation of the Separation of Powers, of the Oath they took, of their duty to abide by the Constitution, and to act within their scope of authority, to offer the protection of the laws, and to enjoin State Officials' ongoing violations of federal laws, with deliberate indifference to violations of the Interstate Commerce Clause and of Equal Rights, which are the statutory basis for a three-judge court, all federal

Defendants conspired, aided and abetted one another, acted in concert to discriminate against Plaintiff and to deny her prospective relief under Title II, 42 U.S.C. § 2000a-5, despite recent three-judge courts, after 1976: *Dennis v. Higgins*, 498 U.S. 439 (1991), *United States v. Virginia* 518 U.S. 515 (1996)

300.    Defendants knowingly engaged in misleading conduct toward Plaintiff with the intent to hinder and delay or prevent her communication to a federal judge or law-enforcement that a pattern of criminal acts are being committed against her.

> 18 U.S.C. § 1512(b) Whoever knowingly engages in misleading conduct toward another person, with intent to— (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense...;
> shall be fined under this title or imprisoned not more than 20 years, or both.

> 28 U.S.C. § 1512(c) Whoever corruptly—
>     (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>     (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

301.    18 Federal Defendants (all court officers), each and every one of them, aided and abetted one another, acted in concert, and conspired  to violate an express statutory or constitutional prohibition on their authority, thus Plaintiff's rights, to deny her Equal Justice under Law, causing, and prolonging her wrongful deprivation of property and liberty to practice by almost three years, over and above the State Defendants' deprivation since 2009..

302.    As a result, Plaintiff is left with no proper determination of her rights to equitable relief and with a null and void, non-reviewable judgment/order "on merits",

which was unlawfully reviewed on the merits by "Summary Order", to fit the original purpose of blocking her access to the courts.

303.    In dereliction of their duty, Defendants Loretta Lynch and Holder, too, refused to intervene, probe, and prosecute State Officials. The judiciary and law-enforcement, Federal and State, shielded, and continue to shield, high-profile violators of federal/criminal laws and of constitutionally/federally-protected rights, themselves included. As a result of their protection of crimes and obstruction of justice, Dr. Anghel is a *de facto* political prisoner.

**Conspiracy to deny mandamus relief -Defendants Amalia L. Kearse, Dennis Jacobs and Gerard E. Lynch case 14-599**

304.    A public official can be personally liable for abuse, corruption or misuse of public office, as these acts are not part of his official sanctioned duties..

305.    Six months after Plaintiff filed, (on 2/28/2014), a **docketed** emergency Petition for writ of mandamus, seeking inter alia a TRO, and immediate reinstatement of her  medical license by a three-judge court, Doc.2, and a month after Plaintiff filed (on 7/29/2014) a motion to expedite, remand, reinstate license, and intervene, on 8/28/2014, Defendants Kearse, Jacobs, Lynch acted in concert with one another and other federal Defendants, and conspired to defraud Plaintiff of opportunity to be heard.

306.    Intentionally, dishonestly and deceivingly, they issued an Order, denying the petition for writ of mandamus as "repetitive" … of the 12/27/13 motion, but calling it "petition", knowing that, as a result of  trickery and scheming,  the "petition" was filed as a motion, that the so-called "petition" was never docketed, that, as a result, her petition to rehear was defected, for non compliance with MOTION requirements, thus